OMAHA ELECTRIC LIGHT & POWER COMPANY, APPELLEE, V. UNION FUEL COMPANY, APPELLANT.

FILED FEBRUARY 15, 1911.   No. 16,305.

1. **Deceit: PROOF.** It is a general rule of law that, in order to obtain redress or relief from the injurious consequences of deceit, it is necessary for the complaining party to prove that his adversary

has made a false representation of material facts; that the complaining party was ignorant of its falsity, and believed it to be true; that it was made with intent that it should be acted upon; and that it was acted upon by the complaining party to his damage.

2. Sales: FALSE REPRESENTATIONS: ACTION: INSTRUCTIONS. In an action to recover back money paid for property which the plaintiff alleges was purchased in reliance upon false representations as to its quality, an instruction to the trial jury that if the plaintiff made the purchase under a contract for property of a certain quality, and that the defendant through misrepresentation and fraud delivered property of an inferior quality and the plaintiff was thereby damaged through the fraud · of defendant, their verdict should be for plaintiff, is *held* erroneous, the element of the absence of knowledge on the part of plaintiff as to the quality of the property delivered and received, and that of plaintiff having been deceived by the representations, being omitted from such instruction.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Reversed.*

*Smyth, Smith & Schall,* for appellant.

*Weaver & Giller, contra.*

REESE, C. J.

This action was instituted in the district court for Douglas county. In the petition the corporate capacity of both plaintiff and defendant is averred, and it is alleged, in substance, that between the 28th day of December, 1906, and the 22d day of February, 1907, the defendant offered to sell plaintiff 14 cars of Cherokee slack or steam coal for the sum of $1,583.49, and falsely and fraudulently represented to plaintiff that the coal so offered was Cherokee slack or steam coal; that plaintiff relied upon said representation, and was thereby induced to and did purchase said coal of defendant and paid therefor the sum of $1,583.49; that the coal so furnished and sold to plaintiff was not the coal contracted to be sold and delivered to plaintiff, but was slack or steam coal of an inferior and

cheaper quality, and not worth the said sum of $1,583.49, nor in excess of the sum of $933.49; that the false representations were made by defendant with intent to cheat and defraud plaintiff, and by reason thereof plaintiff has sustained damages in the sum of $660, for which, with interest, judgment is demanded.

The defendant, for answer, admits the corporate capacity of the parties; pleads a general denial of unadmitted averments; admits the sale of coal substantially as alleged; alleges that upon the delivery of the coal to plaintiff it was examined and inspected by plaintiff at and before its delivery, was accepted, approved and used by plaintiff, and after it was consumed was paid for with full knowledge of the kind and quality thereof. Judgment dismissing plaintiff's action is demanded.

For reply, plaintiff denies that the coal mentioned in its petition, sold to plaintiff by defendant, was inspected and examined at or before delivery; admits that the kind and quality of coal was approved and accepted by plaintiff; but avers that the approval and acceptance was based solely on, and was by reason of, the false and fraudulent representations of defendant, as alleged in the petition. The knowledge of the kind and quality of the coal when paid for is denied, and it is alleged that the true kind and quality of the coal was not discovered by plaintiff until after it was consumed and paid for, when plaintiff demanded of defendant a return of the excess of money so paid. The cause was tried to a jury, and a verdict finding in favor of plaintiff in the sum of $388.15 was returned, upon which a judgment was rendered. Defendant appeals.

It is shown by the evidence that plaintiff ordered and received from defendant a number of cars of slack coal during the months of November and December, 1906, and January and February, 1907, the exact number is not exactly stated, but perhaps from 40 to 50 cars, which were consumed immediately upon delivery, all of which was paid for during the fore part of the month succeeding its

receipt by plaintiff. Some time after the full payment for the coal, plaintiff claimed that defendant had practiced a fraud upon it in the delivery of 14 of the car-loads by a misrepresentation of the quality or kind of coal delivered, in representing it to be Cherokee slack, a superior quality, when in fact it was Iowa and Missouri slack of an inferior grade and value, and this suit is to recover the damages alleged to have been thereby sustained. It is shown that the coal was delivered in car-load lots at the power-house of plaintiff, received by its employees, and often immediately unloaded and consumed in the furnaces. It sufficiently appears that the Cherokee slack coal is mined in a certain district or locality in southeastern Kansas, known as the Cherokee district, that the steam producing quality of that coal is superior to that of either the Iowa or Missouri product and was worth more in the Omaha market than those grades, and that by a visual inspection the difference can be detected by one accustomed to the handling of those coals. It appears from the evidence that, on the first of the month succeeding the deliveries of the previous month, the bills for the price were presented for payment, and payment was made by the 10th of the month in which the bills were presented. This was the custom of the parties. In perhaps every instance the coal was consumed before payment, and in most cases before the presentation of the bills, for it is shown that on some occasions the coal would be conveyed into the furnaces and consumed as fast as unloaded from the cars. It is insisted by plaintiff that there was a fraudulent representation as to the quality of the coal contained in the 14 cars, that it relied upon the statements made, was damaged, and that the alleged fraud was not discovered until after its acceptance and payment, and therefore it is entitled to recover back such part of the money so paid as will compensate the loss.

It is contended by defendant that "representations of quality" do not survive the acceptance of goods by the

vendee where the quality is known or can be ascertained by inspection at the time the goods are delivered. *Roman v. Bressler,* 32 Neb. 240; *Hazen v. Wilhelmie,* 68 Neb. 79; *Cohen v. Hawkins,* 74 Neb. 249; and *Patrick v. Norfolk Lumber Co.,* 81 Neb. 267, in addition to a number of cases from other states, are cited in support of the principle contended for. On the part of plaintiff, it is contended that the doctrine of those cases should not be applied for the reason that the fraud of defendant is clearly shown, and it should not be permitted to hide behind the rule contended for. While the fact was sought to be explained by defendant, there is evidence in the record which tends to prove, and from which the jury might find, that when defendant's attention was called to the fact that it was claimed that a fraud had been practiced upon plaintiff in the quality of the coal delivered, defendant procured and exhibited to plaintiff fictitious bills of lading or expense bills alleged to have been issued by the railroad company by which the coals were delivered to defendant. Proof of this action on the part of defendant, if as claimed by plaintiff, could be received as lending color to defendant's conduct and actions at the time of the contract and delivery of the coal and showing a plan and purpose to deceive, although the alleged false bills were presented many months after the delivery of the coal and payment of the price.

The assignments of error are limited to alleged errors of the district court in giving certain instructions to the jury, in refusing to give a direction for a verdict in favor of defendant, and in overruling the motion for a new trial. There are three principal instructions which may be said to submit the case to the jury and which we quote. They are as follows:

No. 2. "Before the plaintiff can recover in this case it must establish by a prepondrance of the evidence: First, that the contract for coal between plaintiff and defendant was a contract for Cherokee coal. Second, that the defendant, through misrepresentation and fraud upon plain-

tiff, delivered Iowa and Missouri slack coal and collected therefor the price of Cherokee coal, and that said slack coal so delivered was of an inferior quality as compared with Cherokee coal and that plaintiff was thereby damaged."

No. 3. "If the plaintiff has satisfied you by a preponderance of the evidence that the contract was for Cherokee coal, and that the defendant, through misrepresentation and fraud on plaintiff, delivered to plaintiff Iowa and Missouri slack coal and collected therefor the price of Cherokee coal, and you further find that said coal so delivered was of an inferior quality and plaintiff was thereby damaged, through the fraud and misrepresentation of the defendant, then you are instructed your verdict should be for the plaintiff."

No. 4. "You are instructed this action is predicated on the fraud of the defendant, and unless the defendant is guilty of fraud by knowingly and wilfully delivering Iowa and Missouri slack or steam coal to the plaintiff while representing and claiming that the same was Cherokee slack or steam coal, the plaintiff cannot recover. In this connection you are further instructed that, if the plaintiff has failed to satisfy you by a preponderance of the evidence that the defendant delivered to the plaintiff Iowa and Missouri slack or steam coal while at the same time claiming and representing that the same was Cherokee slack or steam coal, then your verdict should be for the defendant."

The principal objection is made to the instruction numbered 3. In Bigelow on Fraud, ch. 1, sec. 1, the subject of fraud and deceit is introduced in the following statement: "It is a general rule of law that, in order to obtain redress or relief from the injurious consequences of deceit, it is necessary for the complaining party to prove that his adversary has made a false representation of material facts; that he made it with knowledge of its falsity; that the complaining party was ignorant of its falsity, and believed it to be true; that it was made with

intent that it should be acted upon; and that it was acted upon by the complaining party to his damage." The rule holding that the false representations must have been made with knowledge of their falsity on the part of the party making them has been modified in this state, and it has been held that averment and proof of *scienter* in an action for fraud and deceit is not necessary. *Gerner v. Mosher*, 58 Neb. 135, 149, and cases therein cited. But it is clear that the lack of knowledge on the part of plaintiff should be made to appear and the instruction should not have been given in the form in which it was submitted. In measuring the instruction by this rule it will be apparent that the trial court, doubtless by oversight, failed to include some of the material elements of fraud. There is no suggestion that it should be found from the evidence that plaintiff did not know of the true quality of the coal at the time it was delivered, or believed and relied upon the representations made and was ignorant of their falsity. In order to successfully maintain the action for fraud these elements must exist, and an instruction which, in stating the facts to be found, omits them, is to that extent erroneous. There can be no doubt but that, had plaintiff known what kind of coal it was receiving during the time the coal was being delivered, there could be no fraud, for it would not have been deceived. It follows that the instruction was prejudicially erroneous and therefore a new trial will be granted.

The judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

FAWCETT, J., not sitting.