ROY BOWEN, APPELLANT, V. JOSEF JOHNSON ET AL., APPELLEES: JESSIE R. PRESTON, INTERVENER, APPELLEE.

FILED NOVEMBER 15, 1935. NO. 29373.

*Walter M. Hopewell,* for appellant.

*C. O. Stauffer, Gale B. Braithwaite* and *Mossman, Anderson & Meissner, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

DAY, J.

This is a suit in equity to foreclose a second mortgage on real estate. Bowen acquired this mortgage by assignment from Jessie R. Preston, as executrix of the estate of Allen R. Preston, deceased. The petition is a conventional one for foreclosure. The defendants' answer pleads fraud on the part of Bowen and others in procuring the assignment. It is unnecessary to notice this further, since they have not filed briefs here, but have adopted the theory of the intervener, who seeks to have the decree affirmed. The petition of intervention, aside from formal allegations including her appointment as executrix, alleges that she assigned this mortgage to Bowen for $2,500, at a time when the mortgage debt was about $7,000, through fraud consisting of misrepresentation as to the value of this mortgage. The trial court decreed that the plaintiff was entitled to no relief and dismissed his suit upon the merits. As to the intervener, it was decreed that the assignment of the mortgage was canceled, but foreclosure was not granted intervener, though this was without prejudice to a future suit for such relief. From this decree the plaintiff appeals to this court.

The trial court made elaborate and comprehensive findings of fact. It seems unnecessary to extend this opinion by a detailed recital of the evidence. It should be sufficient to state that the record establishes that the plaintiff and one Holindrake made substantial material misrepresentations of fact to Mrs. Preston through Mr. Cherry, her attorney; that, relying upon these statements, Mrs. Preston executed the assignment of this mortgage to Bowen, when the face value was about $7,000.

Holindrake was the secretary-treasurer of the Logan Valley Investment Company, through which the defendant Johnson had secured the first mortgage on his land from the Federal Land Bank. It was represented to Mr. Cherry and Mrs. Preston through a series of interviews and letters, adroit though they were, that this second mortgage was of little or no value. It was represented to them that Johnson was willing to give up the land to any one who would protect him on the indebtedness. In fact, there is testimony that Bowen said to Cherry on the day that he secured the assignment, that he wished to hurry back so that he could get the deed from Johnson that night. Holindrake testified that he had no part in the acquisition of this mortgage. But after he knew that Bowen had secured an assignment of the mortgage, he caused Johnson to make an application for a commissioner's loan from the Federal Land Bank on a second mortgage and secured an approval of such a loan in the sum of $4,500. While we can only infer, or surmise, or speculate as to the extent of Hollindrake's interest in this matter, it is apparent from all the circumstances that he was not a disinterested representative of the Federal Land Bank, or moved by any public-spirited motive to assist Johnson and Preston in their difficulties. He contributed a substantial part to the fraud of Bowen in the transaction.

Bowen represented to the intervener that Johnson intended to abandon the farm, when such was not the case. He represented that Johnson's crops were poor, and his financial condition was becoming increasingly hopeless every day, when the contrary was true. These representations affected the value of this mortgage and were made during the negotiations leading to the execution of the assignment. They were made for the purpose of securing the assignment. The intervener was ignorant of their falsity and believed that they were true. The intervener acted as a result of the false representations. No single conversation and no one letter contained the entire false representation. It requires all the surrounding circumstances over a

considerable period of time to establish fraud. So considered, the facts in this case bring it well within the established rule in such a case as announced in *Omaha Electric Light & Power Co. v. Union Fuel Co.*, 88 Neb. 423, in the following language: "It is a general rule of law that, in order to obtain redress or relief from the injurious consequences of deceit, it is necessary for the complaining party to prove that his adversary has made a false representation of material facts; that the complaining party was ignorant of its falsity, and believed it to be true; that it was made with intent that it should be acted upon; and that it was acted upon by the complaining party to his damage."

The intervener in her petition alleged that she tendered a return of the $2,500 to Bowen, which he paid for the assignment. In addition, it is conceded that she kept her tender good throughout the trial of the case. The trial court found that the false and fraudulent representations constituted active, deliberate, and flagrant fraud on the part of plaintiff upon the intervener of such a character as to deprive the plaintiff of the right of any relief in equity. We have perused with interest the authorities presented by the appellee, but we are unable to reach the conclusion of the trial court. The facts do not seem to require the application of that drastic rule to the case at bar. The intervener, with full knowledge of the fraud, filed a petition seeking rescission and tendered the money received for the assignment. She kept her tender good throughout the trial. The rule applicable to this case is: Before a court of equity will cancel an assignment of a mortgage secured by fraud, it will require a return of the consideration so that the assignee will be placed in substantially the same position as when the instrument was executed. *Kruger v. Block*, 114 Neb. 839; *Overton v. Sack*, 99 Neb. 64. There is reason in the rule. It is a test of good faith on the part of one who asks rescission. This is not a case where plaintiff seeks to recover expenditures made to improve the security. It is merely a situation where the intervener wishes to trade back.

This court reaches the same conclusion as the trial court except that the decree should be modified so that the assignment is canceled, and the notes returned to intervener upon the return of the consideration of $2,500. The costs in this case to be taxed to the plaintiff.

AFFIRMED AS MODIFIED.