AUGUST W. WELCH ET AL., APPELLEES, v. ANNETTE C.
REEVES ET AL., APPELLANTS.

5 N. W. (2d) 275

FILED AUGUST 14, 1942. No. 31450.

*A. A. Rezac,* for appellants.

*Arthur C. Pancoast, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CAR-
TER and YEAGER, JJ., and ELLIS, District Judge.

SIMMONS, C. J.

In this action plaintiffs sought to recover damages based

on misrepresentations as to the construction of a house which plaintiffs purchased from defendants. Defendants appeal from a judgment against them.

The plaintiffs in their amended petition alleged that the defendants were the owners of the property consisting of a parcel of ground and a brick veneer house with finished attic; that the plaintiffs negotiated for the purchase of the property between October 6, 1940, and the date of the purchase on November 19, 1940; that they paid $9,000 therefor; that the defendants as an inducement to the plaintiffs to purchase the property represented (1) that the house was entirely and completely insulated including ceiling and side walls; (2) that the house was completely weather stripped; (3) that the floors in the downstairs rooms were in first class condition; (4) that the joists under the first floor were 12-inch joists of select lumber and in first class condition; (5) that the heating plant was adequate to heat the whole house at a cost of about $100 a year; that each of said representations was false and made as a positive statement of known facts; that the falsity of the representations was not discovered until after the plaintiffs purchased and entered into possession; that they were representations of material facts which were not apparent but concealed; that plaintiffs believed said representations to be true, relied thereon and purchased the property, and would not have purchased the property had they known its true condition; that plaintiffs suffered damages as follows: $590 necessarily expended in order to insulate said house, $107 which it will be necessary to expend for weather stripping of doors and windows, $300 to refinish and make the floors as represented by the defendants, $35 for repairs to heating plant, and $1,000 for replacing joists and subfloors, which had been damaged as a result of a fire in the basement of the premises and which damage had been concealed by a permanent ceiling placed over the same; "that the total cost of putting said property in the condition it was represented to be is the sum of $2,032," for which amount plaintiffs prayed judgment.

Defendants by answer admitted the ownership and sale of the premises to the plaintiffs. By specific reference defendants denied each allegation of plaintiffs' petition, denied false statements or representations and denied concealing any conditions or latent defects in the property; denied specifically each allegation of specific damage or "any other sum" and finally denied generally.

The case went to trial and at the conclusion the court submitted to the jury the contentions of the parties as to two elements of damage claimed, to wit, damage because the house was not insulated as represented and because of the burned and defective condition of the floor joists.

As to the measure of damages the court instructed the jury: "If you find for the plaintiffs the measure of their recovery will be such sum as will fairly and reasonably compensate them for any loss they have suffered on account of false representations being made to them by the defendants, or either of them, concerning insulation of the house or the condition of the joists under the floor of the first story." The jury returned a verdict for $1,500. Upon motion for a new trial, the court required a remittitur of $200, which the plaintiffs made, and the motion was overruled.

Plaintiffs do not cross-appeal as to the refusal of the trial court to submit the rejected items to the jury. Accordingly the evidence will be stated only as to the two items submitted to the jury by the trial court.

Plaintiffs offered evidence that when they inspected the basement prior to purchase they found the ceiling all covered, and that Mr. Welch said to Mr. Reeves, "I would like to see the joists * * * what those joists are, and what the condition of them is," and that Mr. Reeves replied they had put on the covering to keep the dirt from going up from the basement and that "they were twelve-inch joists of select lumber * * * all in very good condition;" that after they had gone into possession they had occasion, in doing some wiring, to remove a section of the basement ceiling, and found the original floor joists badly charred; that new joists had been set beside the old and nailed to them; that they were

2 inch by 10 inch and not 2 inch by 12 inch material; that the subfloor was badly charred and in some places completely burned away; that the subfloor was not nailed to the new joists and that there was a space between the top of the new joists and the charred floor; that because of the ceiling covering this condition could not be seen when they inspected the house; that a contractor inspected the property and estimated the costs of putting the joists and subfloor in proper condition and that the estimated cost was $758. This fire had occurred before the defendants purchased the house and the repairs had been made by the former owner.

About the insulation, Mr. Welch testified that Mrs. Reeves told him that the ceiling of the attic was all insulated; that he looked into one of the storage closets off the second floor room and noticed "a blanket insulation" between the second floor joists; that there was no way to see whether the side walls were insulated; that later Mr. Reeves told them the house was completely insulated, side walls and all; that he ascertained after purchase that there was no insulation on the ceiling nor side walls; that later plaintiffs had this insulating work done at a cost of $590 which had been paid. The testimony of the men who insulated the house was that the only insulating they found was on the floor joists of the second floor.

Plaintiffs both testified that they believed these representations to be true, relied upon them and would not have purchased the property had they known they were false.

Defendants' testimony was to the effect that they did not know of the fire or the charred condition of the floor; that they did not know the dimensions of the joists and said nothing about that and were not asked about it; that they told plaintiffs that when they (defendants) purchased the property they were told that the house was insulated and that they made no representation regarding insulation, floors or joists to the plaintiffs.

Defendants first contend that plaintiffs' evidence does not sustain a judgment against them. "It is a general rule of law that, in order to obtain redress or relief from the in-

jurious consequences of deceit, it is necessary for the complaining party to prove that his adversary has made a false representation of material facts; that the complaining party was ignorant of its falsity, and believed it to be true; that it was made with intent that it should be acted upon; and that it was acted upon by the complaining party to his damage." *Omaha Electric Light & Power Co. v. Union Fuel Co.*, 88 Neb. 423, 129 N. W. 989; *Bowen v. Johnson*, 129 Neb. 868, 263 N. W. 215.

Considering the jury's verdict, in the light of disputed questions of fact, it must be held that under the above rule plaintiffs have established a cause of action and a right to recover damages in some amount.

Defendants next argue that the evidence does not sustain a judgment for the sum of $1,300 and that the measure of damages is the difference between the amount paid for the property and the value of the property conveyed. Such is not the measure of damages in this state. The rule long followed is: "In cases where there has not been a rescission, the remedy is damages for the fraud; the burden in such cases is on the person alleging fraud to prove both the fraud and the amount of his damages, and the measure thereof is the difference between the article or thing if it had been as represented and its actual value." *Rankin v. Bigger*, 128 Neb. 800, 260 N. W. 202.

Did plaintiffs' evidence sustain the damages recovered? The only evidence indicating the value of the property is the purchase price. There is no evidence fixing the actual value of the property at the time of the conveyance. That it had a material value is certain. Neither is there evidence as to its value had it been as represented. However, it must be noted that plaintiffs pleaded their case on the theory that their damages were the amount of the cost of placing the property in the condition in which it was represented to be. Defendants did not challenge the sufficiency of the petition by demurrer, but rather joined issue with the plaintiffs on that theory of arriving at the damages. The evidence that the cost of the insulation was $590 was admitted without ob-

jection and was not in any wise contested. The evidence that the estimated cost of restoring the burned joists and floor to a proper condition was $758 was likewise admitted without objection and was not in any wise contested. Defendants did not by motion for an instructed verdict test the sufficiency of this evidence to sustain a judgment, at the close of either plaintiffs' case or the entire cause. The defendants did elect to submit the cause to the jury upon their denial of the deceit and misrepresentation. Defendants did not in their motion for a new trial challenge the correctness of any of the instructions given by the trial court nor did they tender different instructions. They did, in their motion for a new trial, contend that the damages allowed by the jury were "Excessive damages, appearing to have been given under the influence of passion or prejudice; that the verdict is excessive and rendered by the jury for more than the amount claimed due by the plaintiffs. That the record in this case does not sustain the verdict in amount. * * * Error in the assessment of the amount of recovery, which is too large, and which assessment is in excess of the amount claimed and testified to be due the plaintiffs." The trial court recognized this contention and required the plaintiffs to remit a part of the verdict and to reduce it to an amount less than that contended for and testified to by the plaintiffs' witnesses. This was in accord with defendants' motion. Summarizing: The defendants and plaintiffs accepted a common theory of the means by which plaintiffs' damage, if any, was to be determined; they tried the case on that theory; they submitted it to the trial court on that theory down to and including the motion for a new trial. Under these circumstances, we are of the opinion that the evidence, received without objection and not controverted, is sufficient to sustain the judgment. It has long been the rule of this court that, when a certain theory as to the measure of damages is relied upon by the parties in the trial court as the proper one, it will be adhered to on appeal whether it is correct or not. *Behle v. Loup River Public Power District*, 138 Neb. 566, 293 N. W. 413; *U. S. Tire Dealers Mutual Corporation v. Laune*, 139 Neb. 26, 296 N. W. 333.

Finally, defendants contend that ordinary prudence on the part of plaintiffs would have prevented the deception and that an action for the fraud perpetrated will not lie, citing *Osborne v. Missouri P. R. Co.*, 71 Neb. 180, 98 N. W. 685, and *Dyck v. Snygg*, 138 Neb. 121, 292 N. W. 119. The rule has no applicability to the two elements of damage which the trial court submitted to the jury. These defects were latent. The fact that the side walls and ceiling above the second floor room had not been insulated and that the floor joists and subfloor had been burned could only be determined, as it was subsequently determined, by removing a part of the permanent structure of the house. A prospective purchaser is not bound to require a prospective vendor to tear down parts of a house in order to determine whether or not representations as to the structure are correct.

Section 20-1929, Comp. St. 1929, provides: "That whenever the court shall direct a remittitur in any action, and the same is made, and the party for whose benefit it is made shall appeal said action, then the party remitting shall not be barred from maintaining that said remittitur should not have been required either in whole or in part."

Plaintiffs, claiming the benefit of this provision, contend that the trial court erred in requiring them to file a remittitur. This claim is based on the proposition that they were entitled to interest not only on their judgment, but on their claims before judgment, to be included in determining their damages, and that the jury had the right to consider the difference in value between 2 inch by 10 inch joists and 2 inch by 12 inch joists and the effect of making the repairs on the premises. This latter contention may be dismissed by the statement that there is no evidence in the record as to that difference in value or the effect of the repairs if made on the premises.

As to the first item, *i. e.*, interest, the record shows that the $590 was paid before the date of the trial. We find no evidence as to when it was paid. The second item was not paid at the date of the trial. Hence, the only basis for this contention must be that, in an action of this kind, interest

should be calculated on the claims from the date of the payment of the purchase price to the date of the trial. A sufficient answer to this contention is that plaintiffs did not pray for interest as an element of their damages, and the trial court did not include interest as an element of damages in its instructions to the jury. The plaintiffs made no objection to the instructions by motion for a new trial and have not cross-appealed on that matter to this court. The matter therefore was not before the trial court, is not before this court and cannot properly be considered as an element of damages in determining whether or not the remittitur should have been ordered. Plaintiffs do not otherwise question the correctness of the remittitur order.

The judgment of the trial court is affirmed.

AFFIRMED.