E. G. Severin et al., appellants, v. Dr. C. C. Lukovsky,
appellee.

30 N. W. 2d 568

Filed January 9, 1948.   No. 32327.

*Carl F. Benjamin,* for appellants.

*Kennedy, Holland, DeLacy & Svoboda* and *L. J. Tierney,* for appellee.

Heard before Simmons, C. J., Paine, Messmore, Yeager, and Wenke, JJ., and Lightner, District Judge.

Paine, J.

In an equity action for fraud, and asking for a temporary restraining order, the trial court sustained a motion of defendant to dismiss the petition at the close of the plaintiffs' evidence, and plaintiffs appealed.

The plaintiffs charged that the court erred in sustaining defendant's motion to dismiss at the close of plaintiffs' evidence. The second and last assignment of error re-

lates to the ruling of the court in sustaining an objection of defendant to a question asked the plaintiff Severin, but as this error was not discussed in the brief it will not be noted further, under Revised Rules of Court, No. 8 (4).

We will first set out the evidence relating to the two transactions in which plaintiff E. G. Severin secured money of Dr. C. C. Lukovsky, the defendant.

The first deal was on May 27, 1941, when Severin sold defendant a note and mortgage of $600. Exhibit No. 2 is a real estate mortgage for $600, given to plaintiff Severin by Joseph A. Nelson, dated May 10, 1941, secured as a second mortgage on a portion of two lots in the town of Dodge, Dodge County, Nebraska, and subject to a first mortgage to the Madison County Building & Loan Association for $4,250. Exhibit No. 1 is an assignment of said mortgage by plaintiff to the defendant, bearing date May 27, 1941. Exhibit No. 3 is the note for $600, dated May 10, 1941, signed by Joseph A. Nelson, and payable to E. G. Severin, plaintiff.

It appears that Dr. Lukovsky was not anxious to buy the note, and would not pay face value for it, or $550, which Severin wanted, but finally the defendant bought it of Severin for $500, and the mortgage was transferred by written assignment, but no endorsement or assignment appears on the back of the note, which is still payable to E. G. Severin.

Several years later they had another deal, and plaintiff testified that he asked Dr. C. C. Lukovsky, the defendant, for a loan of $350 about December 5, 1944. Dr. Lukovsky agreed to meet him at the office of Paul Palmquist, and when they met there he said he would loan him the $350 provided plaintiff would take back the Nelson second mortgage and note that he had sold him in 1941.

Claude H. Reed, a real estate man, testified that plaintiff had asked him to go with him to the Palmquist office and look over the papers, and said he asked why

the new note and chattel mortgage were for over $900 if he was only borrowing $350, and Dr. Lukovsky said the other money was to reimburse him on a second mortgage he had purchased of plaintiff.

The evidence of plaintiff Severin in regard to the conversation is as follows: "Q- Now tell what the Doctor said in relation to that second real estate mortgage. A- Oh, he said that he had had Paul Palmquist draw up a note and mortgage, in the total of nine hundred and some dollars, whatever it was, because he had purchased this second mortgage at a discount of $500, and they arrived at that amount, I don't know how, and he said he was handling it all in one note and mortgage, and that's when Mr. Reed questioned him a little bit. And I told him (Reed) that as far as I was concerned the note to Nelson was collectible, and he said, 'If that's the case, that's all right, we can go ahead and collect that and we can pay him off.' And Mr. Reed asked him, Doc, for the note and mortgage, I did not, and he said he didn't have it with him, and that's when Mr. Reed asked him if it was in the same condition it was when he received it from me, and the Doctor answered it was."

At the first transaction, the defendant had paid $500 for the note and second mortgage signed by Joseph A. Nelson, a single man, who is a railway mail clerk in Omaha, and nothing having been paid on it in the three years, $99 was added as the interest, and that, with the $350 paid Severin in cash, made $949 as the face amount of the note and of the chattel mortgage given December 5, 1944.

Severin testified: "Q- So you agreed when you signed the new note and the new mortgage that the $599 would be a part of that, and you did sign the note and the mortgage for $949 and signed the chattel mortgage that was involved in this case? A- I did, provided he surrendered them papers to me where I could collect it, yes, because that was part of the deal. Q- That was part

of the deal? A- Yes. I was to get it so I could go and collect it. Q- So you did ultimately get them back? A- A year and a half afterwards. * * * When he kept it a year and a half I think he should still keep it, and if it is valid then he can collect it, because he told me definitely that he was sending an attorney up there to protect himself in that foreclosure action, therefore I had no more interest in it."

Plaintiff Severin admitted there was nothing in writing that Dr. Lukovsky was to give back the note and mortgage, but on his verbal promise. Severin on cross-examination admitted that he knew before their deal on December 5, 1944, that the Nelson second mortgage was in litigation because of the foreclosure of the first mortgage.

When the $600 note, mortgage, and original assignment were finally returned to Severin in September 1946, with a reassignment of the second mortgage back to Severin from Dr. Lukovsky, the original note, mortgage, and assignment bore an endorsement across them in ink, reading: "Cancelled by Supplemental Decree Nov. 27, 1943 Leonard L. Larsen Clerk Dist Court By Pauline Kendrick Deputy."

With the facts now before us, we can better understand the allegations of the pleadings filed in the case at bar. The petition alleged that plaintiff E. G. Severin borrowed $350 from the defendant on December 5, 1944, and that he and his wife executed a promissory note and a chattel mortgage to the defendant for $949, of which $599 represented a note of Joseph A. Nelson, secured by a mortgage. Paragraph 2 reads as follows: "That, at said time, defendant stated and represented to plaintiffs that said note and real estate mortgage was in the same condition as when he had received them and that he would so deliver them to plaintiffs."

It was further alleged that the note and mortgage had been canceled by decree of the district court for Dodge County on November 27, 1943; that the representations

on the part of the defendant that the note and mortgage were in the same condition as when he received them were false, untrue, and fraudulent, and the defendant knew of such falsity, but that the plaintiffs believed the false representations of the defendant and relied upon such untrue statements, and by reason thereof executed the note and mortgage, and that the plaintiffs received only $350 in cash as a consideration for the $949 note and chattel mortgage executed by them, the balance of the consideration having no value; that the plaintiffs have repaid Dr. Lukovsky all of the $350 borrowed, except $102.19, which amount they tendered to the defendant's attorney by the check of the Reed Realty Company, which tender was refused for reasons other than not being in lawful money of the United States; that the defendant has threatened to take possession of the chattel property by writ of replevin, and will do so unless restrained; that the plaintiffs hereby tender into court $102.19, and pray that the note of $949 and chattel mortgage securing the same be canceled, and that a temporary restraining order issue to restrain defendant from taking possession of the property described in the chattel mortgage. Thereafter such temporary restraining order was issued by the district court.

For answer to the petition, the defendant alleged that plaintiffs executed the note for $949 and chattel mortgage, which was duly placed of record in Douglas County, Nebraska, which note covered a cash amount of $350 and a note and mortgage which the plaintiff had assigned to him prior thereto, but that the defendant did not on December 5, 1944, agree or promise to reassign to plaintiffs the second mortgage and note, but held same as security for the indebtedness theretofore owing, and made no representations or promises.

The defendant admitted that the second mortgage became involved in litigation when the first mortgage was foreclosed in Dodge County; that the sale of the real estate did not more than pay off the first mortgage,

and nothing was paid on the second mortgage; "that through inadvertence, mistake, or error on the part of either the Judge of the District Court of Dodge County, Nebraska, or the Clerk of said Court, the word 'cancelled' was written across the face of the note secured by said second mortgage, and in this connection the defendant alleges that said notation is a mere nullity and is without force and effect, and that the holder of said note has a cause of action against the maker thereof. That the plaintiffs' attorney, handling the matter for the plaintiffs during the month of September, 1946, so advised the plaintiffs."

The answer further alleged that plaintiffs' attorney stated to defendant's attorney, prior to September 1946, that the defendant had sufficient other security in the chattel mortgage, and asked if the defendant would reassign to the plaintiffs the second mortgage and note, and plaintiffs received the second mortgage and note by good and valid assignment, and which was accepted by the plaintiffs, and that plaintiffs handed said note to their counsel for collection and were advised by their attorney that said note constituted a good cause of action against the maker thereof, and were advised that the statute of limitations would not run against the note until five years after the time it became due.

The answer charged that, although the plaintiffs have been the owners and holders of the note since September 1946, they have not adjudicated the question of the validity of said note, and that said note today constitutes a good cause of action against the maker thereof, at least to the extent of the validity of said note at its inception. Wherefore, defendant prayed that plaintiffs' petition be dismissed, that the restraining order be released and dissolved, and the court award the defendant such damages as he has sustained by reason of the temporary restraining order, and for further relief.

On March 11, 1947, there was filed in the district court an amendment to the petition, setting out an

additional paragraph, No. 8, in which the plaintiffs tendered to the defendant the promissory note of $600 of Joseph A. Nelson and the real estate mortgage securing said note. The reply was a general denial.

At the trial on March 3, 1947, the plaintiff E. G. Severin and his two witnesses, Claude H. Reed and Allen H. Reed, testified, the exhibits heretofore described were introduced in evidence, and plaintiffs rested. Thereupon, the following motion was made: "MR. TIERNEY: I am going to move for the dismissal of this case, on the grounds that there is, in the first place, no showing of any fraud whatsoever. The fact is that Dr. Lukovsky and Mr. Severin entered into a deal on December 5, 1944 where a note was signed for the sum of $949.00, and a chattel mortgage was signed. They tried to set that aside on the grounds or on the basis that the Doctor promised to give back to Mr. Severin that Nelson second mortgage and note in the same condition as it was before. Mr. Severin knew that the first mortgage was being foreclosed on that property, necessarily involving that second mortgage. At the time he entered into the deal and the note and chattel mortgage was executed, Dr. Lukovsky, according to their contention, was to deliver back the second note and mortgage sometime later in the same condition as it was before. (Argument to the Court by both counsel.) THE COURT: I will sustain the motion to dismiss. To which ruling of the Court plaintiffs except."

Plaintiff Severin knew that the first mortgage of $4,250 was in process of foreclosure in Dodge County. In that action, Dr. Lukovsky had employed counsel and attempted to protect himself, but nothing was left for his second mortgage, and he finally got back his note and mortgage from the Dodge County district court. The instruments were accepted back by Severin, but there is no showing made of any attempt on his part to collect the note, but he has retained the instruments.

This court has said: "After exhausting the remedy

by foreclosure, the equity proceeding is no longer pending and there is no further purpose or right of the court to control the beginning of an action at law. Where that situation occurs, if remedies at law exist, an action at law may be had without the requirement of securing permission of the equity court." Federal Farm Mtg. Corporation v. Claussen, 138 Neb. 518, 293 N. W. 424.

This court more than fifty years ago announced the foundation elements on which fraud actions must be based to recover: "To maintain an action for damages for false representation, the plaintiff must allege and prove (1) what representation was made; (2) that it was false; (3) that plaintiff believed the representation to be true, (4) relied on and acted upon it, (5) and was thereby injured." Stetson v. Riggs, 37 Neb. 797, 56 N. W. 628. See, also, 23 Am. Jur., Fraud and Deceit, § 172, p. 985.

"In alleging fraud, it is essential that the pleading show injury to plaintiff as a result of the fraud charged." 37 C. J. S., Fraud, § 87, p. 385.

In Dyck v. Snygg, 138 Neb. 121, 292 N. W. 119, this court said, in brief, that to maintain an action for fraudulent representations it is not only necessary to establish the telling of the untruth, knowing it to be such, but to prove that plaintiff had a right to rely on it, and did so rely, and suffered damages.

"To maintain an action for damages for false representation the plaintiff must allege and must prove what representation was made; that it was false and so known to be by the defendant charged with making it, or else was made without knowledge as a positive statement of known fact; that the plaintiff believed the representation to be true; and that he relied on and acted upon it, and was thereby injured." Campbell v. C & C Motor Co., 146 Neb. 721, 21 N. W. 2d 427.

"It is a general rule of law that, in order to obtain redress or relief from the injurious consequences of

deceit, it is necessary for the complaining party to prove that his adversary has made a false representation of material facts; that the complaining party was ignorant of its falsity, and believed it to be true; that it was made with intent that it should be acted upon; and that it was acted upon by the complaining party to his damage." Omaha Electric Light & Power Co. v. Union Fuel Co., 88 Neb. 423, 129 N. W. 989. See, also, Welch v. Reeves, 142 Neb. 171, 5 N. W. 2d 275.

In the case at bar, we have reached the conclusion that the plaintiffs failed to prove that any false representations were made, or, if made, that they relied thereon, and that they suffered any injury or damages growing out of the transaction. We therefore find that the trial court was right in sustaining the motion to dismiss the petition at the close of the plaintiffs' evidence.

AFFIRMED.

CHAPPELL, J., participating on briefs.