T. L. STERNER, APPELLANT, V. ROBERT LEHMANOWSKY,
ALSO KNOWN AS RUSSELL ROBERT LEHMANOWSKY,
ET AL., APPELLEES.

113 N. W. 2d 588

Filed March 2, 1962.  No. 35078.

*Mitchell & Taylor,* for appellant.

*Andrew J. McMullen* and *Munro, Parker & Munro,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action to enforce the provisions of a statutory bond of a licensed used car dealer brought by a holder of notes endorsed with recourse and secured by chattel mortgages and certificates of title on automobiles sold by the dealer.  At the close of the plaintiff's case, motions for directed verdict by both the dealer and the surety were sustained, and plaintiff perfected this appeal.

Plaintiff, T. L. Sterner, who will hereinafter be referred to as plaintiff, is the holder of a small loan license and operates a real estate, insurance, and loan business in Franklin, Nebraska. The defendant, Robert Lehmanowsky, was a licensed used car dealer operating businesses at Kearney and Grand Island, Nebraska. He will be hereinafter referred to as Lehmanowsky. Defendant, Western Surety Company, hereinafter referred to as surety company, was the surety on a motor vehicle dealer's bond furnished by Lehmanowsky pursuant to section 60-619, R. R. S. 1943, which is set out hereinafter.

The plaintiff pleaded two causes of action against Lehmanowsky and the surety. The first cause of action alleged that the plaintiff purchased from the defendant Lehmanowsky, with recourse, a note of one Danielson, secured by a chattel mortgage on, and the certificate of title to, a 1955 Buick. Danielson defaulted on his payments and Lehmanowsky was given the note, mortgage, and certificate of title to repossess the Buick unless payment was made. When the Danielson papers were delivered to Lehmanowsky, the plaintiff took a demand note from him for $863.19, the amount due on the Danielson obligation. Plaintiff testified that he took this note as a receipt. The demand note, which is exhibit 2, contains no recitation of that fact or reference of any nature to the Danielson transaction. The only recitation on the note is as follows: "833 if paid by 3/1." Lehmanowsky subsequently collected the amount due on the mortgage but did not remit it to plaintiff.

Plaintiff's second cause of action covers three separate transactions which for convenience may be described as follows: (1) A 1952 Buick sedan sold to one Don Lizer, hereinafter referred to as Lizer Buick; (2) a 1952 Ford sold to Gusto Gonzales, hereinafter referred to as Gonzales Ford; and (3) a 1953 DeSoto sold to Leroy Journey, hereinafter referred to as Journey DeSoto. It seems that only the certificate of title, endorsed in blank, was delivered to the plaintiff on the Gonzales Ford. On

the other two transactions; the notes, chattel mortgages, and certificates of title were delivered to the plaintiff. The plaintiff alleges that Lehmanowsky either repossessed or was supposed to repossess the three cars but now falsely claims they are lost or stolen. None of the papers on these cars was delivered to Lehmanowsky, as was the situation in the first cause of action. The Lizer and Journey notes were assigned with recourse.

In evaluating the plaintiff's evidence, which is very sketchy, we apply the following rule: A motion for a directed verdict admits, for the purpose of a decision on the motion, the truth of the material and relevant evidence on behalf of the party against whom the motion is directed, and he is entitled to have every controverted fact found in his favor and to have the benefit of fair inferences deducible from the evidence. Hancock v. Parks, 172 Neb. 442, 110 N. W. 2d 69.

The Lizer Buick paper was sold to Sterner February 7, 1959, for $550. The first payment was due March 12, 1959. Nothing was paid on the note, and sometime before March 30, 1959, it was turned over to the plaintiff's attorneys. On that date, Lehmanowsky was allowed credit of either $25 or $35 against the obligation, which represented an adjustment on other notes. The car was apparently repossessed by Lehmanowsky and put on his lot in Grand Island where it was supposed to have been damaged in a hail storm. Lehmanowsky agreed with plaintiff's attorneys that any money received from the insurance company on the hail loss would be turned over to the plaintiff. On October 3, 1959, Lehmanowsky advised plaintiff's attorneys that no loss was paid on the Buick. He was then told to bring the car to Kearney and to deliver it to an auction house. Extracts from Lehmanowsky's deposition indicate that the car was to have been delivered to the auction house by one Marvin who tends bar at a tavern in Grand Island; that Lehmanowsky met him at a Kearney tavern after he supposedly delivered the Buick; and that he did not see it

thereafter. The car apparently was never delivered. Plaintiff, on the assumption that it was Lehmanowsky's responsibility to account for the car, produced no further evidence. Plaintiff, in his brief, sums up his position in the following paragraph: "In brief, if we assume that the Lizer Buick represented by Exhibit 6 ever existed, it has now vanished someplace between a bar in Grand Island and a tavern in Kearney. Lehmanowsky would have us believe that it just disappeared off a Kearney street. He owes a better explanation than that."

Exhibit 6 is plaintiff's ledger sheet on the transaction. Exhibit 7 is the certificate of title. Exhibit 7 was in the plaintiff's possession. The car could not have been sold by Lehmanowsky unless he fraudulently secured a duplicate title which would be covered by the bond. If the car never existed, exhibit 7 would be a forgery and the transaction would be covered by the bond. The plaintiff has the burden of proving his case. He certainly cannot shift that burden to the defendant by innuendo.

The Journey DeSoto was sold by Lehmanowsky in July 1958 for $588.24. Lehmanowsky discounted the paper with plaintiff and received $500. When the August payment was not paid by Journey, Lehmanowsky assigned another note and mortgage to plaintiff in the amount of $178.20, for which he was given credit on this transaction. The car was subsequently wrecked by Journey and was never repossessed by Lehmanowsky, although in a letter to plaintiff, exhibit 4, set out hereinafter, Lehmanowsky referred to it as repossessed. Plaintiff's attorneys had asked Lehmanowsky to deliver the Journey car after the wreck to the auction house. This was never done.

The Gonzales Ford certificate of title, signed in blank, and another title not involved herein, were delivered to the plaintiff's attorneys in May 1959 in exchange for a certificate of title on a Chrysler which was being sold.

On July 16, 1959, Lehmanowsky reported that the Ford had been stolen from his lot, and advised plaintiff's attorneys that when he settled with the insurance company he would turn the proceeds over to them. There is no evidence in this record as to the nature of the policy under which a claim was being made or whether any assignment of the policy had been made to the plaintiff. Lehmanowsky later settled with the insurance company but the amount of the settlement does not appear in evidence. The proceeds were never paid over to the plaintiff or to his attorneys.

It is plaintiff's contention that the losses sustained by him in financing these four transactions are the result of Lehmanowsky's "misappropriations, misrepresentations, fraud and deceit in the conduct of his business as a used car dealer, in the handling of cars repossessed by the dealer for nonpayment by the purchasers," and as such are covered by the surety bond.

The plaintiff relies heavily on Sun Ins. Co. v. Aetna Ins. Co., 169 Neb. 94, 98 N. W. 2d 692, in which we said: "As we interpret section 60-619, R. S. Supp., 1955, upon which the plaintiff's bond is based, the Legislature intended that persons other than purchasers might sustain damage or loss by reason of a motor vehicle dealer's misrepresentations, false and fraudulent acts, and misappropriations of funds or deceitful practices in representing a motor vehicle to the purchaser thereof. It is obvious that the Legislature intended that any person sustaining loss by reason of a motor vehicle dealer's conduct in engaging in acts prohibited by law would be entitled to recourse on such a bond as the plaintiff's bond in the instant case, regardless of the particular status of such person as defined in section 60-601, R. S. Supp., 1955.

"The plaintiff's bond, being a statutory bond, must be interpreted in the light of section 60-619, R. S. Supp., 1955.

"In 11 C. J. S., Bonds, § 39, p. 418, it is said: 'A statu-

tory bond will be construed in the light of the purpose for which it is required as expressed in the statute, * * *. Accordingly, in view of the fact that the public has an interest in official and other statutory bonds, such bonds should be liberally construed to effect the purpose for which they were given, and the ordinary rules of construction give way.' ".

Since that opinion, the Nebraska Motor Vehicle Dealers License Board was set up to administer the Motor Vehicle Dealers Licensing Act, and sections 60-601 to 60-616, inclusive, R. S. Supp., 1955, some of which were referred to in the opinion in Sun Ins. Co. v. Aetna Ins. Co., *supra,* have been repealed. However, the provisions of those sections have been reenacted in Chapter 60, article 14, R. R. S. 1943.

In Sun Ins. Co. v. Aetna Ins. Co., *supra,* all but two of the transactions were on cars on which the dealer fraudulently secured duplicate certificates of title for the purpose of defrauding the creditor. The other two transactions involved cars on which he was given the certificates of title to take the cars to a car auction upon his representation that the proceeds of the sale would immediately be paid to the credit company. He transferred the titles to innocent purchasers and left the state. The recovery was not for misappropriation of funds belonging to the purchaser, but for fraud practiced by the dealer on other than purchasers. This is not the situation we have in the instant case, as the recitals above will clearly indicate.

Section 60-619, R. R. S. 1943, provides as follows: "Applicants for a motor vehicle dealer's license or for a used motor vehicle dealer's license shall, at the time of making application, furnish a corporate surety bond in the penal sum of ten thousand dollars on a form to be prescribed by the Attorney General of the State of Nebraska. The bond shall provide (1) that the applicant will faithfully perform all the terms and conditions of said license, (2) that the licensed dealer will fully in-

demnify any person by reason of any loss suffered because of (a) the substitution of any motor vehicle other than the one selected by the purchaser, (b) the dealer's failure to deliver to the purchaser a clear and marketable title, (c) the dealer's misappropriation of any funds belonging to the purchaser, (d) any alteration on the part of the dealer so as to deceive the purchaser as to the year, model of any vehicle, and (e) any false and fraudulent representations or deceitful practices whatever in representing any motor vehicle, and (3) that the automobile dealer shall well, truly, and faithfully comply with all the provisions of his license and the acts of the Legislature relating thereto. The aggregate liability of the surety, however, shall in no event exceed the penalty of said bond."

The essential provisions of the bond, which is in evidence, are as follows: "THE CONDITION OF THIS OBLIGATION IS SUCH, That whereas, the said Principal has made application for a motor vehicle dealer's license in accordance with Sections 60-1401 to 60-1416, and all Acts Amendatory thereto, and has paid or deposited all fees in connection therewith according to law.

"NOW, THEREFORE, upon such license being issued to the said Principal above named, if the said Principal hereinabove named: 1- Shall faithfully perform all of the terms and conditions of said license, 2- Shall fully indemnify any person by reason of any loss suffered because of: a- The substitution of any motor vehicle other than the one selected by the purchaser b- The licensee's failure to deliver to the purchaser, a clear and marketable title c- The licensee's misappropriation of any funds belonging to the purchaser d- Any alteration on the part of the licensee so as to deceive the purchaser as to the year, model of any vehicle e- Any false and fraudulent representations or deceitful practices whatever in representing any motor vehicle. 3- If the licensee shall well, truly and faithfully comply with all provisions of his license and the acts of the Legislature re-

lating thereto, then this obligation shall be null and void, otherwise to be and remain in full force and effect."

It is evident that the bond essentially embraces the provisions required by section 60-619, R. R. S. 1943.

As we interpret the act and the transactions involved herein, the plaintiff is not in any sense a purchaser as described in the act. Consequently, if he is to recover it must be under subdivision (2)(e) of section 60-619, R. R. S. 1943, which is subsection "e" under numeral "2" in the bond. This provision is: "Any false and fraudulent representations or deceitful practices whatever in representing any motor vehicle." Before discussing this point, we also note that plaintiff calls attention to the fact that under section 60-1412, R. R. S. 1943, a license may be revoked for a dealer "willfully defrauding any retail buyer, to the buyer's damage, or any other person in the conduct of the licensee's business, * * *." He suggests this is one of the conditions which is covered by the bond in the requirement that the applicant will faithfully perform all the terms and conditions of the license. Granted that the plaintiff's position is correct, and that he is included in the language, it is still necessary for him to prove that Lehmanowsky has willfully defrauded him. The general rule is that fraud is never presumed but must be clearly proved by the party who pleads and relies on it. Fritsche v. Turner, 133 Neb. 633, 276 N. W. 403. We can find no evidence of willful fraud in this record, as will be apparent in our discussion of subdivision (2)(e) of section 60-619, R. R. S. 1943.

The first cause of action did not involve the sale or exchange of a motor vehicle. The plaintiff took a demand note from Lehmanowsky and delivered to him the Danielson papers. There is nothing in the demand note to indicate that it is other than what it purports to be. Plaintiff testified that Lehmanowsky said that if Danielson "paid off in full then he would, of course, send us the money for that, or else bring it down." There is

no proof in this record that this promise, if it is material, was not made in good faith. About a month after the demand note was given, Lehmanowsky wrote the plaintiff exhibit 4, which is as follows:

"Friday

"Mr. Sterner:

"I sure have been having bad luck. Last Sunday, someone broke in my office & stole all my titles & papers Also took 2 cars (59 Buick and 56 Ford station wagon). I had some deals & I was coming down to trade some & pay you some. Now I cant even do that until I get all these titles back or obtain duplicates.

"Here is a rundown on the accts:

"Gillming - up to date

"Ganser - $50.00 enclosed

"Journey - repo.

"Kearney Rug - Up to date

"Lizer - Repo - on lot

"Murphy - Repo - on lot

"Rick - Repo - on lot

"Scott - Repo - on lot

"Weston - Must repo - will pay out if sold.

"Danielson - Paid me & I will be down & pay you some & another deal in exchange: I used the money on Danielson payoff & bought 2 cars & was going to borrow the money here from Lowe & Co. & had plenty to pay you. Thats when they got all my titles. You will just have to bear with me until I get some of this stuff sold. I completely overhauled Scotts 53 Olds & cost me $150.00. All the repos are in shape except the old 53 DeSoto (Journey) This weather is another damn nuisance. Looks like snow here right now.

"Respy

"R. Lehmanowsky"

An Oregon case in point on the principle involved is Butte Motor Co. v. Strand, —— Or. ——, 358 P. 2d 279. The Oregon court held that the failure of an automobile dealer, to whom automobiles were consigned, to pay for

them as they were sold as he had agreed to do, did not amount to fraud within a statute providing that if any person suffers loss by reason of fraud by a licensed automobile dealer, he has a right of action against the surety upon the dealer's bond in the absence of a showing that the dealer's promise to pay for the automobiles as sold was not made in good faith. There is no such showing in this case.

As set out heretofore, the second cause of action involved three separate transactions. The plaintiff at the very most on the Lizer Buick has raised a possibility which he later rebuts by direct evidence that Lehmanowsky may have collected some hail insurance on the car which he had agreed to give to the plaintiff's attorneys to apply on the indebtedness, and also that Lehmanowsky failed to deliver the car to an auction house when he was told to do so. We fail to see how, without more, this could constitute willful fraud or false and fraudulent representations within the meaning of the statute. Fraud must relate to a present or preexisting fact and may not generally be predicated on an inference concerning any event in the future or acts to be done in the future. Nathan v. McKernan, 170 Neb. 1, 101 N. W. 2d 756. This is true unless, of course, such representations as to future acts are falsely and fraudulently made with an intent to deceive. Severin v. Lukovsky, 149 Neb. 113, 30 N. W. 2d 568. The failure to take a car to a third person on demand does not constitute fraud nor give rise to any action on the bond. Also, even if plaintiff had a right of action for hail insurance collected by Lehmanowsky on the Lizer Buick, he should have produced some evidence not only that some insurance was collected, but also the amount collected. He did neither.

The most that can be said about the Journey DeSoto was that Lehmanowsky represented it as repossessed but did not repossess it. However, plaintiff's evidence also indicates it may have been repossessed and then

Lehmanowsky permitted Journey to take it for the purpose of having the damage appraised to see if a settlement could be made with an insurance company and that it was not returned. While there is nothing but an inference in the record, it would appear that Journey, who had run into a tree, could not collect for the damage. In any event, we do not consider there was sufficient evidence, if any, to constitute the type of false representation covered within the terms of the bond.

Was the failure to turn over the insurance proceeds collected by Lehmanowsky on the Gonzales Ford covered by the bond? Plaintiff suggests that Lehmanowsky misappropriated insurance funds within the terms of the bond. We assume he has reference to subdivision (2)(c) of section 60-619, R. R. S. 1943, which is also subsection "c" under numeral "2" of the bond, which reads as follows: "The licensee's misappropriation of any funds belonging to the purchaser." Does the plaintiff, on the facts in this case, qualify as a purchaser as that term is used in the statute? We think not. But assuming he does, has Lehmanowsky misappropriated his funds? Plaintiff held the certificate of title on the Gonzales Ford, signed in blank. It was delivered with another to secure the return of a certificate of title on a Chrysler. There being no evidence as to the insurance policy, we can only speculate that Lehmanowsky made some recovery under a general theft policy covering his lot. Would the mere delivery of a certificate of title signed in blank, ostensibly for security, constitute also an assignment of a portion of a blanket theft policy covering all cars in Lehmanowsky's possession? We do not believe Lehmanowsky's failure to keep his promise to turn over the proceeds is a misappropriation within the terms of the bond on the evidence in this record.

Plaintiff further contends that the bond protects against the dealer willfully defrauding any person, and quotes a definition of "defraud" which we approved in Benedict v. State, 166 Neb. 295, 89 N. W. 2d 82, as fol-

lows: "Defaud - '* * * to deprive a person of property or any interest, estate, or right by fraud, deceit, or artifice.'" We agree the bond does protect against willful fraud, but willful fraud is not proved by the mere failure to keep a promise or to pay a debt.

For the reasons stated, the motions for directed verdict were properly sustained and the judgment of dismissal entered by the trial court is hereby affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.