Sun Insurance Company of New York, a corporation, Appellee, v. Aetna Insurance Company of Hartford, Connecticut, a corporation, et al., Appellants.

98 N. W. 2d 692

Filed October 23, 1959.   No. 34568.

Sidner, Lee, Gunderson & Svoboda, Robert W. Haney, and Thomas J. Walsh, for appellants.

Spear, Lamme & Simmons, for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The Sun Insurance Company, a corporation, insti-

tuted this action in the district court for Dodge County as plaintiff, against the Aetna Insurance Company, a corporation, Mercantile Credit Company, a corporation, and Platte Valley Bank of North Bend, a corporation, as defendants. By order of the court, Illinois Appleton & Cox, Incorporated, and certain Underwriters at Lloyds of London were brought into the case as additional parties. The purpose of the action was to obtain a declaratory judgment to adjudicate plaintiff's liability and the division of any award money among claimants upon the statutory motor vehicle dealer's bond furnished by Lumir L. Urban, a motor vehicle dealer, pursuant to the provisions of section 60-606, R. R. S. 1943, and sections 60-601, 60-611, and 60-619, R. S. Supp., 1955. Cross-petitions were filed by all of the defendants praying for judgment on the bond. The trial court rendered judgment in favor of the plaintiff and against the defendants and dismissed the defendants' cross-petitions. Motions for new trial were filed by all of the defendants, and all were overruled. Defendants perfected appeal to this court.

For convenience we will refer to the parties as follows: Defendant Aetna Insurance Company, as Aetna; defendant Mercantile Credit Company, as credit company; defendant Platte Valley Bank of North Bend, as the bank; Illinois Appleton & Cox, Inc., if required, as Appleton & Cox; John Alfred Halford, representative of the Underwriters, as Halford; and Lumir L. Urban, who is not a defendant, as Urban.

We summarize the pleadings of the respective parties and eliminate therefrom certain facts which are covered in detail in the statement of facts appearing later in the opinion.

The plaintiff's petition alleges that in December 1955, Urban, an individual doing business as Urban Motors in Fremont, applied for a license to sell new and used cars, signed a bond as principal, and the plaintiff signed the bond as surety; that on December 6, 1955, a license

as a motor vehicle dealer for the year 1956 was issued to Urban by the proper authorities; that the bank carried a policy of insurance with Aetna, protecting the bank against loss on loans secured by chattels by reason of its failure to have the loans on automobiles endorsed on the certificates of title thereto; that under the terms of the policy, Aetna paid the bank $5,000 to reimburse it in part for the loss sustained on Urban loans; and that Aetna claims that it is subrogated to the rights of the bank in the amount of $5,000 by virtue of the terms of said insurance policy on a loan receipt which Aetna took at the time of its payment of such amount to the bank.

The plaintiff further alleges that the defendants have made claims against the plaintiff in varying amounts, as set forth in the petition, totaling $20,270; that each defendant claims it is covered by the bond of Urban which was signed by the plaintiff as surety for him although said claims of the defendants arise out of loans made on automobiles to Urban by defendants; and that there has arisen between the plaintiff and said defendants an actual controversy as to the rights, liabilities, duties, and legal relationships as between the plaintiff and defendants, and more particularly, the controversy between defendants and plaintiff that defendants claim said bond covers the loan of money by defendants to Urban for the purpose of purchasing automobiles for Urban. Plaintiff alleges it is not liable on the bond because the bond does not cover the seller of an automobile to Urban, or lenders of money to Urban, and that the bond is limited to and only for the protection of purchasers of automobiles from Urban.

The petition prays for judgment against the defendants; that a declaration and determination be made declaring the rights, duties, liabilities, responsibilities, and legal relations between the plaintiff and defendants; that it be determined that the plaintiff is not liable on the bond for the reasons stated; that the court declare the

bond only protects purchasers of automobiles from Urban because of the violation of any of the provisions of the bond; that the court declare and determine that defendants loaned money to Urban and therefore have no claim under the bond; and that in no event can liability of the plaintiff exceed $10,000, and if it should be discovered that there are legal claims of more than $10,000 against plaintiff under the bond, that the court then pro rate said claims allowing to each defendant its proper percentage of $10,000.

The credit company, in its answer and cross-petition, alleges that Urban, as a licensed automobile dealer covered by the plaintiff's bond, caused this defendant to suffer a loss in the sum of $9,870, which loss was caused because of the false and fraudulent representations and deceitfulness of Urban in representing the purchase of automobiles as before set forth in this pleading (which facts appear in the opinion); that Urban failed to comply with the provisions of his license and the laws of this state; and that as a result of said failure and the false representations this defendant has been damaged, which damage is a proper claim against the bond described in the plaintiff's petition, for which this defendant prays judgment in the amount of $9,870, together with interest, costs, and attorney's fees.

The answer and cross-petition of Appleton & Cox and Halford, representative of certain underwriters, alleges that the underwriters paid the credit company $3,500, being the maximum loss on one borrower, on the policy of insurance issued by this cross-petitioner to the credit company; that by virtue of said payment to the credit company, Halford is subrogated to any rights of the credit company to the extent of such payment; and that under the provisions of the bond, the defendants are entitled to recover from the plaintiff because of the violations of the statutes. They pray judgment in behalf of the credit company and Halford in the amount of $10,000, and costs.

The answer and cross-petition of Aetna and the bank alleges that on October 22, 1956, October 30, 1956, and November 28, 1956, the bank made loans of money to Urban for the purchase of automobiles; and that the bank required Urban to execute separate notes and trust receipts in its favor for the amount of the purchase price of each automobile and required Urban to deposit with the bank the original certificates of title to each automobile signed or endorsed in blank. This pleading then alleges certain facts relating to false and fraudulent representations made by Urban to the bank, and the borrowing of money from the bank for the purchase of automobiles. It further alleges that on or about December 13, 1956, there was in full force and effect a corporate surety bond in the penal sum of $10,000 executed by Urban as principal and the plaintiff as surety, whereby the plaintiff contracted to indemnify any person damaged by failure of Urban to perform the terms of the motor vehicle dealer's license; that by reason of the willful and fraudulent acts of Urban the bank has been damaged in the amount of $10,400 which amount is owing to the bank; that Aetna, by virtue of the willful and fraudulent acts of Urban, has loaned the bank the sum of $5,000 under the terms and conditions of a loan receipt received by Aetna; and that by reason of the willful and fraudulent acts of Urban, plaintiff is indebted to these defendants in the amount of $10,400. Aetna and the bank prayed that the court enter judgment against the plaintiff in the sum of $10,400; and that the court further enter judgment in favor of these defendants and against the plaintiff for all attorneys' fees incurred in this action.

There is no dispute as to the facts which are stipulated by the parties. However, to obtain a better understanding of what is involved in this appeal, we deem that a comprehensive statement of the facts is necessary.

The record discloses that in December 1955, Urban conducted a business identified as Urban Motors, with

its principal place of business in Fremont, Nebraska; that for the purpose of receiving a motor vehicle dealer's license as a new and used car dealer, as provided by statute, Urban applied for a license and signed a bond in the amount of $10,000 as principal, and the Sun Insurance Company signed said bond as surety; that on or about December 6, 1955, such a license was issued to Urban for the year 1956; and that during all times mentioned herein the bond and license were in full force and effect.

On or about October 16, 1956, Urban bought and took possession at West Des Moines, Iowa, of a 1957 Ford Fordor Customline automobile, obtaining an Iowa certificate of title therefor. On October 22, 1956, Urban borrowed $2,100 from the bank upon said automobile, signed a note in this amount and a trust receipt, depositing the same, plus the original Iowa certificate of title, signed in blank, to the same with the bank. On October 25, 1956, Urban obtained from the county treasurer of Polk County, Iowa, a duplicate certificate of title to the above-described automobile by falsely telling said treasurer that the original certificate of title to the said automobile had been lost. On October 26, 1956, Urban went to the county clerk of Dodge County, Nebraska, and obtained an original Nebraska certificate of title to the said automobile by showing this county clerk the Iowa duplicate certificate of title to the said automobile. Later on, on this same date, Urban borrowed $2,240 from the credit company upon the same automobile, signed a note for this amount, and a chattel mortgage, and deposited the note and chattel mortgage, plus the original Nebraska certificate of title with the credit company. Neither the bank nor the credit company had its mortgage or trust receipt recorded on the certificate of title held by it. On or about December 13, 1956, Urban called the manager of the credit company and informed him that he was going to sell the above-described automobile at a used car auction in Omaha

the next day, and requested permission to take this automobile from Fremont to the used car auction and for a release of the certificate of title. The manager of the credit company authorized Urban to take the automobile to the auction, and gave him the endorsed certificate of title upon Urban's verbal promise and representation that he would bring the proceeds received from the sale to the credit company. On or about December 14, 1956, Urban sold the automobile to a purchaser, whose name is unknown to the parties, delivered to the purchaser the original Nebraska certificate of title, and obtained payment from the purchaser.

On or about October 20, 1956, Urban bought and took possession of a 1957 Ford Fordor Fairlane automobile, obtaining a Nebraska certificate of title therefor. On October 22, 1956, Urban borrowed $2,600 from the bank upon said automobile, signed a note in this amount and a trust receipt, and deposited both of these instruments, plus the original certificate of title, signed in blank, to this automobile with the bank. On or about October 25, 1956, Urban obtained from the county clerk of Dodge County a duplicate certificate of title to said automobile by falsely telling said clerk that the original certificate of title to this automobile had been lost. On or about October 26, 1956, Urban borrowed $2,780 from the credit company upon said automobile, signed a note in this amount and a chattel mortgage, and deposited the note and chattel mortgage, plus the duplicate certificate of title to said automobile, with the credit company. Neither the bank nor the credit company had its mortgage or trust receipt recorded on the certificate of title held by it. On or about December 13, 1956, Urban called the manager of the credit company and informed him that Urban was going to sell the above automobile at a used car auction in Omaha the next day, asked permission to take this automobile to Omaha to be sold at said auction, and asked for a release of the certificate of title. The manager of the credit company

authorized Urban to take the automobile to the auction and gave him the endorsed certificate of title upon Urban's verbal representation that he would bring the proceeds received from the sale to the credit company. On or about December 14, 1956, Urban sold said automobile to a purchaser whose name is unknown to the parties, delivered to the purchaser the duplicate Nebraska certificate of title, and obtained payment from the purchaser.

From August to October 1956, Urban bought and took possession of the following automobiles, and borrowed the following sums of money from the bank upon said automobiles: October 30, 1956, a new 1957 Chevrolet 4-door sedan, $2,200; November 28, 1956, a new 1956 Mercury 4-door sedan, $2,250; November 28, 1956, a new 1956 Ford Victoria, $1,890; and November 28, 1956, a used 1955 Chevrolet Bel Air, $1,440. Urban, at the time of borrowing the above amounts, signed notes in the amounts indicated above, payable to the bank, and deposited them with the bank, together with trust receipts and the original certificates of title, signed in blank, to said automobiles. On various dates thereafter, Urban obtained from the county clerk of Dodge County, Nebraska, duplicate certificates of title to each of the above automobiles by falsely telling said clerk that the original certificates of title to the automobiles had been lost. The bank did not have its trust receipts recorded on the certificates of title. On later dates, unknown to the parties, Urban sold the above-described automobiles to buyers whose names are unknown to the parties, obtained payment from the buyers, and gave the latter the duplicate certificates of title to the said automobiles. Urban did not reimburse the bank on any of the above loans, but rather kept the proceeds of the sales.

Urban bought and took possession on November 6, 1956, of a 1956 Chevrolet 4-door sedan, upon which he borrowed $1,850 from the credit company. On Decem-

ber 3, 1956, Urban bought and took possession of a 1957 Buick Tudor Riviera, upon which he borrowed $3,000 from the credit company. At the time Urban borrowed the above amounts he signed notes payable to the credit company, and deposited them with the credit company, together with chattel mortgages and the original certificates of title to said automobiles, endorsed in blank. Urban, at the same time, agreed to keep the above-described automobiles on his lot in Fremont and at the time of sale to pay the amount on the indebtedness. The credit company did not have its mortgages recorded on the certificates of title. On or about December 13, 1956, Urban called the manager of the credit company and informed him that he was going to sell the above-described automobiles at a used car auction in Omaha the next day, and asked permission to take the automobiles to the auction and for a release of the certificates of title. The manager of the credit company authorized Urban to take the automobiles to the auction and gave him the endorsed certificates of title upon Urban's verbal representation that he would bring the proceeds received from the sale to the credit company. On or about December 14, 1956, Urban sold the said automobiles to purchasers whose names are unknown to the parties, delivered to the purchasers the original Nebraska certificates of title, and obtained payments from the purchasers.

After the above transactions Urban left Nebraska and on August 6, 1957, was arrested in California, returned to Nebraska, and charged in the district court for Dodge County with fraudulent transfer of property on two counts. A hearing was held in said court on August 29, 1957, at which hearing Urban pleaded nolo contendere. He was found guilty and placed on probation for a number of years.

Claims were made by the Underwriters, the credit company, Aetna, and the bank against the plaintiff as

surety on Urban's motor vehicle dealer's bond for losses sustained by them.

The credit company, Appleton & Cox, the representative of the Underwriters, and the bank assign as error that the findings, conclusions, and judgment of the trial court are contrary to law and to the evidence; and that the trial court erred in holding that the Legislature intended that the bond of a licensed motor vehicle dealer was limited to the protection of retail purchasers of motor vehicles.

The sections of the statutes here involved appear under Chapter 60, article 6, the Motor Vehicle Dealer's License Act. We set forth certain parts of section 60-606, R. R. S. 1943, and sections 60-601, 60-611, and 60-619, R. S. Supp., 1955.

Section 60-601, R. S. Supp., 1955, provides in part: "As used in this act, unless the context otherwise requires: * * * (3) Person shall mean every natural person, firm, copartnership, association, or corporation; * * * (8) Administrator shall mean the titular head of the Department of Roads and Irrigation, who shall be charged with the enforcement of this act; (9) Department shall mean the Department of Roads and Irrigation; * * *."

Section 60-606, R. R. S. 1943, provides in part: "Any person, desiring to act as a motor vehicle dealer, used motor vehicle dealer, * * * must file with the administrator an application for a license under oath. The application shall be in such form and detail as the administrator shall prescribe, setting forth the following information: (1) The name and address of the applicant and the name under which he intends to conduct business; * * * (2) the place or places, including the city, town or village and the street and street number, if any, where the business is to be conducted * * *."

Section 60-611, R. S. Supp., 1955, provides in part: "The administrator may, upon his own motion, and shall, upon a sworn complaint in writing of any person, in-

vestigate the action of any such person licensed as a motor vehicle dealer, used motor vehicle dealer, * * * and shall have the power to * * * revoke or suspend any license issued under this act upon proof of unfitness on the part of the applicant or licensee, and at any time when the applicant or licensee has been found guilty of (1) intentionally publishing advertising which is misleading or inaccurate in any material particular or in any way misrepresents any of the products or services of the business conducted, (2) knowingly purchasing, selling or dealing in stolen motor vehicles, (3) material misstatement in application for license, (4) willfully defrauding any retail buyer, to the buyer's damage, *or any other person in the conduct of the licensee's business,* (5) willfully failing to perform any written agreement with any retail buyer, (6) having made a fraudulent sale, transaction or repossession, (7) failure or refusal to furnish and keep in force any bond required, * * *." (Emphasis supplied.)

Section 60-619, R. S. Supp., 1955, provides: "Applicants for a motor vehicle dealer's license or for a used motor vehicle dealer's license shall, at the time of making application, furnish a corporate surety bond in the penal sum of ten thousand dollars on a form to be prescribed by the Attorney General of the State of Nebraska. The bond shall provide (1) that the applicant will faithfully perform all the terms and conditions of said license, (2) that the licensed dealer will fully indemnify any person by reason of any loss suffered because of (a) the substitution of any motor vehicle other than the one selected by the purchaser, (b) the dealer's failure to deliver to the purchaser a clear and marketable title, (c) the dealer's misappropriation of any funds belonging to the purchaser, (d) any alteration on the part of the dealer so as to deceive the purchaser as to the year, model of any vehicle, and (e) any false and fraudulent representations or deceitful practices whatever in representing any motor vehicle, and (3) that the automo-

bile dealer shall well, truly, and faithfully comply with all the provisions of his license and the acts of the Legislature relating thereto. The aggregate liability of the surety, however, shall in no° event exceed the penalty of said bond."

Sections 60-601, 60-606, and 60-611, R. R. S. 1943, were first enacted in 1937. Section 60-619, R. R. S. 1943, was first enacted in 1945, and provided for a bond in the penal sum of $2,500. Subsequently this section was amended to increase the bond to the penal sum of $10,000, and the amended section became effective on September 14, 1953. § 60-619, R. S. Supp., 1955. It contains the same provisions, otherwise, as the law enacted in 1945 on the same subject.

The following authorities are applicable.

In State ex rel. Menard v. Nichols, 167 Neb. 144, 91 N. W. 2d 308, this court said: "All statutes relating to the same subject should be construed and considered together for the purpose of giving effect to the legislative intention. * * * All statutes in pari materia must be considered together and construed as if they were one law, and, if possible, effect given to each provision."

In In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d 418, the court said: "All statutes relating to the same subject are considered parts of an homogeneous system; so, too, all statutes in pari materia must be taken together and construed as if they were one law and effect be given to every provision."

In Bozell & Jacobs, Inc. v. Blackstone Terminal Garage, Inc., 162 Neb. 47, 75 N. W. 2d 366, it was held: "An arrangement between an insurer and an insured, whereby the former loaned to the latter the amount of a loss under the terms of a policy of insurance, to be repaid only if the insured made a recovery from a third person, is a lawful agreement and the loan thus made is not such a payment of insurance as to make the insurer the real party in interest." See, also, 46 C. J. S., Insurance, § 1209, p. 170; Shiman Bros. & Co. v. Nebras-

ka National Hotel Co., 143 Neb. 404, 9 N. W. 2d 807. Consequently, the loan by Aetna to the bank has in no way altered the status of the claim of the bank against the plaintiff insofar as this case is concerned, and this loan is not a material fact to be considered by the court in determining the validity of the claim of the bank, or any part thereof. This would also be true of the credit company.

In Placek v. Edstrom, 148 Neb. 79, 26 N. W. 2d 489, 174 A. L. R. 856, this court said: "In enacting a statute, the Legislature must be presumed to have had in mind all previous legislation upon the subject. In the construction of a statute courts must consider the preexisting law and any other laws relating to the same subject."

We deem the foregoing sections of the statutes to be remedial in character, and in this connection the following authorities are applicable.

In 50 Am. Jur., Statutes, § 393, p. 417, it is said: "As in the case of all statutes, the primary rule of construction of remedial statutes is to ascertain, declare, and give effect to the intention of the legislature, as gathered from the language used. In the interpretation of remedial statutes, however, a special effort is made to avoid a technical construction of the language used, and to give it a fair construction so as to promote justice in the interest of the public good. The purpose of the act should be taken into consideration. The construction should be one which would be consistent with, and promote, preserve, and effect, the object of the statute, so as effectually to meet the beneficial end in view, and not one which would defeat the manifest purpose or design of the statute. * * * A remedial statute should be construed so as to afford all the relief within the power of the court which the language of the act indicates that the legislature intended to grant."

The bond furnished by the plaintiff for Urban was in the amount of $10,000. The principal provisions of

the bond are as follows: "NOW, THEREFORE, upon such license being issued to the said principal _____ above named, if the said principal _____ hereinabove named shall faithfully perform all of the terms and conditions of said license, and shall well, truly and faithfully comply as such licensee with all the provisions of said Act of the Legislature and shall fully indemnify any person by reason of any loss suffered because of (a) the substitution of any motor vehicle other than the one selected by the purchaser, (b) the licensee's failure to deliver to the purchaser, a clear and marketable title, (c) the licensee's misappropriation of any funds belonging to the purchaser, (d) any alteration on the part of the dealer so as to deceive the purchaser as to the year, model of any vehicle and (e) any false and fraudulent representations or deceitful practices, whatever in representing any motor vehicle; * * *." The bond was signed December 31, 1955, and became effective for the license year ending December 31, 1956. Urban signed the bond as principal and the plaintiff signed as surety.

When Urban borrowed money from the bank to purchase automobiles he gave trust receipts. These trust receipts provided in part as follows: "In consideration of the advancement of money as is set out on the reverse side of this trust receipt the trustee hereby agrees to purchase the above described articles for and in the name of the said Bank, and to store said articles in trust for said Bank or its assigns as its property, with liberty to sell the same for the account of said Bank or its assigns, and further agrees, in case of sale, to immediately pay the above amount advanced for the purchase of said articles, together with interest thereon at __% per annum * * *. It is agreed that any sale which Trustee may make of said articles shall be for the account of said Bank or its assigns, and the proceeds thereof shall be kept separate, capable of identification as the property of said Bank or its assigns, and such portion of the

proceeds as is necessary to pay the above amount advanced together with any other expense to which said Bank has been placed for insurance or taxes, shall be paid directly and immediately to said Bank. It is agreed that said Bank is under no liability to allow said articles to remain with the undersigned for any specific period of time, and its right to take possession of same shall not be subject to question."

The plaintiff's bond met the requirements of section 60-619, R. S. Supp., 1955, and contains the terms and conditions of said section. There is no question but that Urban breached the terms and conditions of the bond and clearly violated the terms and conditions of his motor vehicle dealer's license to the damage of the bank. The stipulated facts show without contradiction that Urban made false representations wherein he falsely represented to different public officials that the original automobile certificates of title which he deposited with the bank as security for the cash advances made by the bank to him, had been lost so that he, Urban, might obtain duplicate certificates of title to be used to defraud the bank of money advanced to him, and the bank's security therefor. The stipulated facts further show that Urban falsely represented to subsequent purchasers by these fraudulent duplicate certificates of title that the automobiles covered thereby were free and clear of liens and that he was the sole and only owner thereof and entitled to sell said automobiles. Further, the stipulated facts disclose that Urban misappropriated the money received from the subsequent purchasers of the said automobiles and owing to the bank and the credit company, and absconded from the state with the money, seeking to avoid criminal prosecution.

The contention of the plaintiff is that the coverage afforded by the bond does not extend to the bank and the credit company for the reason that its bond was only for the protection of purchasers of automobiles from Urban. As heretofore mentioned, the plaintiff's

bond met the requirements of section 60-619, R. S. Supp., 1955, which contained conditions required by subdivisions (c) and (e) of said section. The bond recited as one of the conditions set forth therein that the bond would be null and void unless Urban, as licensee "shall fully indemnify any person by reason of any loss suffered because of" the conditions imposed under subdivisions (c) and (e) of section 60-619, R. S. Supp., 1955. Condition (e) of the bond specifically indemnified against "any false and fraudulent representations or deceitful practices, whatever in representing any motor vehicle; * * *."

The Legislature, in section 60-601, R. S. Supp., 1955, defined the word "person" as "every natural person, firm, copartnership, association, or corporation." Without doubt, the bank and the credit company fall within the definition of a person as defined by said section.

As we interpret section 60-619, R. S. Supp., 1955, upon which the plaintiff's bond is based, the Legislature intended that persons other than purchasers might sustain damage or loss by reason of a motor vehicle dealer's misrepresentations, false and fraudulent acts, and misappropriation of funds or deceitful practices in representing a motor vehicle to the purchaser thereof. It is obvious that the Legislature intended that any person sustaining loss by reason of a motor vehicle dealer's conduct in engaging in acts prohibited by law would be entitled to recourse on such a bond as the plaintiff's bond in the instant case, regardless of the particular status of such person as defined in section 60-601, R. S. Supp., 1955.

The plaintiff's bond, being a statutory bond, must be interpreted in the light of section 60-619, R. S. Supp., 1955.

In 11 C. J. S., Bonds, § 39, p. 418, it is said: "A statutory bond will be construed in the light of the purpose for which it is required as expressed in the statute, * * *. Accordingly, in view of the fact that the public

has an interest in official and other statutory bonds, such bonds should be liberally construed to effect the purpose for which they were given, and the ordinary rules of construction give way."

It is also said in 11 C. J. S., Bonds, § 40, p. 420: "The law at the time of the execution of a statutory bond is a part of it; if it gives to the bond a certain legal effect, it is as much a part of the bond as if in terms incorporated therein. Where a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention it will be presumed that the intention of the parties was to execute such a bond as the law required, and such statute constitutes a part of the bond as if incorporated in it, and the bond must be construed in connection with the statute * * *." See, also, Philip Carey Co. v. Maryland Casualty Co., 201 Iowa 1063, 206 N. W. 808, 47 A. L. R. 495, and cases cited therein. See, also, Duke v. National Surety Co., 130 Wash. 276, 227 P. 2.

It is said in 50 Am. Jur., Suretyship, § 318, p. 1112: "On the other hand, the courts, with possibly one or two exceptions, construe the contract of a surety company, acting for compensation, and of any other surety for hire, most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect; the rule of strictissimi juris, on the ground that sureties are favored in law, has no application."

We believe the Legislature did not, by statutory enactment, limit the Motor Vehicle Dealer's License Act to just a retail buyer. The licensee loses his license for defrauding a retail buyer or any other person in the conduct of the licensee's business.

We need not repeat the facts relating to the credit company. Suffice it is to say that there can be no doubt but that the credit company was defrauded and deceived by representations made by Urban to it, and

by virtue thereof suffered a loss. False and fraudulent representations were made by Urban to the manager of the credit company as shown by the stipulated facts, by clearly misrepresenting the titles to the automobiles and by failure to return the money for the sale thereof allegedly at an automobile auction to be held in Omaha. The credit company is entitled to recover against the plaintiff on the plaintiff's bond in this action.

Some contention is made by the plaintiff that the trial court eliminated certain evidence relating to witnesses who appeared before the legislative committee with reference to the Motor Vehicle Dealer's License Act. The trial court did not admit the statement of the senator who introduced the legislative bill, that is, the Motor Vehicle Dealer's License Act. The rule is as stated in Nebraska District of Evangelical Lutheran Synod v. McKelvie, 104 Neb. 93, 175 N. W. 531, 7 A. L. R. 1688: "Where the general intent of the legislature may readily be discerned, yet the language in which the law is expressed leaves the application doubtful or uncertain, the courts may have recourse to historical facts or general information, in order to aid them in interpreting its provisions."

In the instant case, the sections of the statutes involved are clear and unambiguous, and there would be no necessity to resort to the historical facts or general information to aid this court in interpreting the provisions of the said sections of the statutes.

For the reasons given herein, we conclude that the total liability of the plaintiff, as provided for in its bond, is the amount of $10,000, and the bank and the credit company are entitled to recover their proportionate share of the $10,000 as shown by the losses sustained by them. The defendant Aetna is entitled to be subrogated to the recovery obtained by the bank to the amount loaned by it to the bank by its contract with the bank in the amount of $5,000. Halford, designated as a defendant and representative of certain under-

writers as hereinbefore set forth, is entitled to be subrogated in the amount of $3,500 as against the amount to which the credit company is entitled to recover.

We further conclude that attorneys' fees shall be allowed the attorneys for the bank and the attorneys for the credit company in the amount of $1,200.00, to be divided equally, the attorneys' fees to be taxed as part of the costs against the plaintiff. See, §§ 44-201 and 44-359, R. R. S. 1943; Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co., 98 Neb. 863, 155 N. W. 235. We further conclude that plaintiff shall pay all costs in this court and in the district court.

The judgment of the trial court is reversed and the cause remanded with directions to render judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.