STATE SURETY COMPANY, A CORPORATION, APPELLANT, V. WILLIAM E. PETERS, TAX COMMISSIONER OF THE STATE OF NEBRASKA, ET AL., APPELLEES.

249 N. W. 2d 740

Filed January 26, 1977. No. 40773.

Edward F. Carter, Jr., of Barney & Carter, for appellant.

Paul L. Douglas, Attorney General, Ralph H. Gillan, and G. Michael Wiseman, for appellees.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

This is an action for a declaratory judgment for a determination of the liability of State Surety Company, appellant, upon a special fuel tax bond. The issues tried below and presented here are: (1) Does the bond have retroactive effect? (2) If not, do payments of $8,405.16 made in June 1970, apply against the principal's prebond liability, or should they be applied to reduce appellant's liability? (3) Was the liability of appellant fixed and determinable on November 8, 1972, so as to impose liability for interest? The court found the liability of appellant to be retroactive, and rendered judgment for the face amount of the bond, $15,000, with interest at the rate of 7 percent from November 8, 1972. Plaintiff-appellant appeals. We affirm.

On or about May 27, 1969, Larry L. Thompson commenced the sale of fuel in Fremont, Nebraska. He sold fuels which are subject to special fuel tax under the provisions of the special fuel tax act, sections 66-601 to 66-639, R. R. S. 1943. From that date through June 7, 1970, he continued said business without being licensed or bonded and without remitting to the State of Nebraska special fuel use tax due upon the sale of said fuels.

Larry L. Thompson applied for a Nebraska special fuel dealer's license and the same was granted to him on June 8, 1970, upon his posting a bond as required by section 66-609, R. R. S. 1943. This bond was issued by Nebraska Surety Company in the penal sum of $15,000. Nebraska Surety Company was thereafter acquired by, merged into, and became a part of the appellant, State Surety Company.

Beginning in June 1970, Thompson started filing reports of special fuel sales, generally accompanying his reports with checks in the exact amount of the tax shown due for the months reported. Additionally, in June 1970, he also remitted two checks in the total amount of $8,405.16, the application of which is disputed by the parties.

The parties have stipulated that the disposition of this case is entirely dependent upon application of the law to the undisputed facts of taxes due and payments made so that one of the following three conclusions apply:

"i. If the court determines the bond to have retroactive effect so as to render plaintiff liable for the principal's gas tax indebtedness incurred prior to June 8, 1970, then and in that event the court should find plaintiff obligated unto the State of Nebraska in the principal sum of $15,000, which amount is the full face amount of the bond, together with such interest and costs as may be prescribed by law. Interest at 7% on $15,000 from November 8, 1972 to November 4, 1975 is $3,138.81.

"ii. If the court determines that the bond does not have retroactive effect so as to render plaintiff liable for the principal's gas tax indebtedness incurred prior to June 8, 1970, and if the court determines that all payments made by the principal after June 8, 1970 apply against the liability incurred during the term of this bond, then and in that event the court should find that the plaintiff has no liability to the State of Nebraska upon its bond; and

"iii. If the court determines that the bond does not have retroactive effect so as to render plaintiff liable for the principal's gas tax indebtedness incurred prior to June 8, 1970, and if the court determines that all payments made by the principal after June 8, 1970, except:

"(a) the June 19, 1970 payment of $5,000.00 appearing at Exhibit 2, page 209; and

"(b) the June 24, 1970 payment of $3,405.16 appearing at Exhibit 2, page 209;

then and in that event the court should find plaintiff obligated unto the State of Nebraska in the principal sum of $7,612.44 plus interest and penalties to 11-4-75 of $5,333.26 together with such interest on the judgment and costs as may be prescribed by law."

The bond is executed on a form provided by the State. It is silent on the question of the surety's liability for the principal's past indebtedness. It simply provides that the surety and principal are jointly and severally bound in the penal sum of $15,000, and if the principal "shall make reports, pay all motor fuel taxes, penalties and interest which may be assessed or imposed against said principal, and maintain adequate records all of which are required by the provisions of the laws of the State of Nebraska and the regulations promulgated pursuant thereto, as the same now exist or may hereafter be enacted or amended, in the way and manner and at the times provided in such laws, then these presents shall be void, otherwise the same shall be and remain in full force and effect."

Because this is a statutory bond, however, the language of the bond is not necessarily controlling. "The liability of a surety on statutory undertakings is measured by the terms of the statute rather than by the terms set forth in the agreement, where the two are in conflict, as the statute forms a controlling part of every such agreement." Stearns, Law of Suretyship (5th Ed., 1951), § 2.4, p. 14.

In Sun Ins. Co. v. Aetna Ins. Co. (1959), 169 Neb. 94, 98 N. W. 2d 692, we said: "The law at the time of the execution of a statutory bond is a part of it; if it gives to the bond a certain legal effect, it is as much a part of the bond as if in terms incorporated therein."

In that same case, we said: "Courts construe the

contract of a surety company, acting for compensation, and of any other surety for hire, most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect."

The question then is how the statute in effect at the time the bond was executed may affect the instrument. The statute, section 66-609, R. R. S. 1943, provided: "No special fuel dealer's license shall be issued to any person or continued in force unless such person has furnished a surety bond in such form and amount as the motor fuel tax administrator may require, but in a sum not less than one thousand dollars and not more than fifteen thousand dollars, to secure his compliance with the provisions of sections 66-601 to 66-640, and the payment of any and all taxes, including interest and penalties *due and to become due* under the provisions of sections 66-601 to 66-640. The amount of bond shall be fixed and determined by the motor fuel tax administrator, in approximately two times the average monthly tax liability of the applicant." (Emphasis supplied.)

It is readily apparent that the words "due and to become due" are the controlling words herein. It is apparent to us that the words "due and to become due" express a clear legislative intent to impose liability for all sums due when the bond is filed. The District Court so held.

Appellant argues the general law of the land has uniformly been that suretyship agreements take effect from the date of their execution. That may be true. However, here the statutory language is a part of the surety bond. It specifically provides that the bond, at the time it is executed, covers the payment of any and all taxes, including interest and penalties, due and to become due. To accept appellant's interpretation would be to construe this language out of the statute. This we refuse to do.

Appellant further argues the word "due" must be in-

terpreted together with the words "or continued in force." It suggests the statute is drafted to apply to both the issuance and the renewal of special fuel dealers' licenses. The surety argues the language for licenses issued is prospective for tax, interest, and penalties to become due. For a license continued in force, it assures compliance by requiring payment of taxes, including interest and penalties due and to become due. That is a possible interpretation, but we do not believe it to be the applicable one in this instance. We interpret the language "due and to become due" to apply to original as well as continuing bonds.

In Sun Ins. Co. v. Aetna Ins. Co. (1959), 169 Neb. 94, 98 N. W. 2d 692, we said: " 'A statutory bond will be construed in the light of the purpose for which it is required as expressed in the statute, * * *. Accordingly, in view of the fact that the public has an interest in official and other statutory bonds, such bonds should be liberally construed to effect the purpose for which they were given, and the ordinary rules of construction give way.' "

We believe the Legislature did not by the inclusion of the words "continued in force" intend to restrict the application of the word "due" to such continued bond. Those words refer to the license, not the bond. They intend the cancellation of the license if a bond expires or for any reason is canceled. The license will not be continued in force unless a valid surety bond is on file.

We find the bond construed in the light of the statute provides for retroactive effect. The surety is liable for the full amount of its bond and in accordance with the stipulation, plus interest since the date of the demand November 8, 1972.

This resolution of the case eliminates any necessity to discuss the other issues raised. We affirm the judgment of the trial court.

AFFIRMED.