HAVELOCK BANK OF LINCOLN, A CORPORATION, APPELLEE, V. WESTERN SURETY COMPANY, A SOUTH DAKOTA CORPORATION, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, ROGER SUGHROUE, AND UNITED AUTO SALES, INC., A CORPORATION, APPELLEES, FRED C. EBERHARDT, JR., ET AL., THIRD-PARTY DEFENDANTS, APPELLEES.

UNITED AUTO SALES, INC., DOING BUSINESS AS CLASSIC COACH, LTD., ET AL., APPELLEES, V. ROGER SUGHROUE, APPELLANT.

352 N.W.2d 855

Filed June 8, 1984. No. 83-192.

William L. Walker and Earl Ludlam of Walker & Ludlam, for appellant Western Surety Company.

Ronald Rosenberg of Rosenberg & Taute, for appellant Roger Sughroue.

Edward F. Carter, Jr., and Dana Baker of Barney, Carter & Johnson, P.C., for appellee Havelock Bank.

Crosby, Guenzel, Davis, Kessner & Kuester, for appellees United Auto Sales and Carol Norquist.

KRIVOSHA, C.J., WHITE, and CAPORALE, JJ., and McCOWN and BRODKEY, JJ., Retired.

WHITE, J.

This appeal involves two cases which were consolidated for both trial in the district court for Lancaster County, Nebraska, and for the purpose of this appeal. The first case is a declaratory judgment action brought by appellee Havelock Bank of Lincoln (Bank), a corporation, against Western Surety Company (Surety), a South Dakota corporation, Roger Sughroue (Sughroue), and United Auto Sales, Inc. (UAS), a corporation. The purpose of the action was to enforce the provisions of the statutory bond

of UAS, a licensed new and used car dealer, upon which Surety was the surety. The case also included a third-party complaint in which Surety was permitted to file against third-party defendants, Fred C. Eberhardt, Jr., Christa M. Eberhardt, and Carol Norquist, individually and as the personal representative of the estate of Clayton E. Norquist, deceased, for subrogation and indemnity under an indemnity agreement for the statutory bond. The second case, brought by UAS, doing business as Classic Coach, Ltd., and Fred C. Eberhardt, Jr., against Sughroue, is an action to recover the sale price of an automobile.

The district court held: (1) That Surety was liable, under its bond to the Bank, for $14,500, plus interest and costs, under Neb. Rev. Stat. § 60-1419 (Reissue 1978). (2) That the third-party defendants were liable to Surety under their indemnity agreement in the same amount as Surety was liable to the Bank. (3) That Sughroue did not revoke his acceptance of the automobile and was consequently liable to UAS in the amount of $24,500, plus interest. Surety appeals the decision of the first case; Sughroue appeals the decision of the second case. We affirm.

At the outset it is best to note that while the two cases have some common parties, they are totally independent of each other and should not have been consolidated. For some inscrutable reason the parties agreed to do so, however. Clarity requires that we discuss the cases separately.

In the first case, *Havelock Bank of Lincoln v. Western Surety Company*, the record discloses that in January 1979 the Bank entered into a security agreement and floor-plan agreement with UAS through Fred C. Eberhardt, Jr., the president of UAS. Pursuant to the floor-plan agreement, the Bank provided funds to UAS through Eberhardt. The funds were evidenced by note and trust receipts transferring title and right of possession of certain

automobiles to the Bank under the floor-plan agreement. The certificates of title for the floor-plan automobiles were also held by the Bank as security.

At the time of trial on August 2, 1982, the principal amount due the Bank from UAS was $14,500, with interest accrued from July 17, 1981, at the rate of 12 percent per annum. This indebtedness was upon a note No. 23506, and was secured by the security agreement and certificate of title to a 1979 Classic Coach automobile, VIN 1H57U7K584825 (Car I).

UAS was a licensed new and used car dealer in Lancaster County, Nebraska. Pursuant to the statutory requirements for obtaining a motor vehicle dealer's license, UAS had obtained the required statutory bond from Surety. See § 60-1419. On November 7, 1979, while in California for an auto show, Eberhardt met Sughroue in Glendale, California. Sughroue indicated that he was interested in purchasing Car I, and the sale was consummated on the same day by Sughroue's giving Eberhardt a $14,500 check. Eberhardt drafted all but the signature of Sughroue's check and made it payable to "Classic Coach." Eberhardt conceded that Classic Coach, Ltd., never became an operating entity. Sughroue took possession of the automobile. When asked about the title to Car I, Eberhardt told Sughroue that he would deliver the title to Sughroue when the check cleared the bank. Eberhardt admitted that he did not inform Sughroue that the automobile was subject to a security claim of the Bank, saying he told Sughroue the title was "in our Bank" without saying anything more, although Eberhardt was aware that the automobile was floor-planned with the Bank and that the Bank held title to the automobile. On November 9, 1979, Eberhardt deposited the check in a newly opened checking account in Glendale, California, in the name of Fred C. Eberhardt, Jr.

On November 26, 1979, Eberhardt received a receipt in the mail from the bank in Glendale advising

him that the funds from Sughroue's account had been collected and deposited to his account. However, Eberhardt made no arrangements to deliver the title to Sughroue. The money was not paid to the Bank and the Bank continued to hold title to the automobile. In early 1980 Eberhardt telephoned the Bank and informed them of the sale of Car I. When asked about the proceeds from the sale, Eberhardt indicated that a second automobile was to be sold and the Bank would be paid after the sale of that car. The Bank never received payment for Car I, and it still holds the title. Sughroue has physical possession of Car I.

Surety's four assignments of error can be summarized as follows: (1) The trial court erred in entering judgment against Surety on the basis that the Bank suffered a loss due to fraud on the part of UAS. (2) The district court erred in not allowing Surety to recover attorney fees on the judgment taken against the indemnitors (third-party defendants) as provided in the indemnity agreement.

The applicable scope of review for the purpose of the first case was recently set forth in *Quinn v. Godfather's Investments*, 213 Neb. 665, 330 N.W.2d 921 (1983), citing *Larutan Corp. v. Magnolia Homes Manuf. Co.*, 190 Neb. 425, 433, 209 N.W.2d 177, 182 (1973), wherein we stated that

this court has treated the determination of factual issues in a declaratory judgment action which would otherwise be an action at law in the same manner as if a jury had been waived. The findings of the trial court therefore have the effect of the verdict of a jury and will not be set aside unless clearly wrong.

The Bank contends, and the district court found, that Surety was liable to the Bank on its statutory bond because the Bank came within the provisions of § 60-1419, which provides in pertinent part:

Applicants for a motor vehicle dealer's license . . . shall, at the time of making application, fur-

nish a corporate surety bond . . . in the penal sum of twenty thousand dollars . . . on a form to be prescribed by the Attorney General of the State of Nebraska. The bond shall provide (1) that the applicant will faithfully perform all the terms and conditions of said license, (2) that the licensed dealer will fully indemnify any person or other dealer by reason of any loss suffered because of (a) the substitution of any motor vehicle or trailer other than the one selected by the purchaser, (b) the dealer's failure to deliver to the purchaser a clear and marketable title, (c) the dealer's misappropriation of any funds belonging to the purchaser, (d) any alteration on the part of the dealer so as to deceive the purchaser as to the year model of any motor vehicle or trailer, and (e) any false and fraudulent representations or deceitful practices whatever in representing any motor vehicle or trailer, and (3) that the motor vehicle, motorcycle, motor vehicle auction, or trailer dealer or wholesaler shall well, truly, and faithfully comply with all the provisions of his license and the acts of the Legislature relating thereto. The aggregate liability of the surety shall in no event exceed the penalty of said bond.

The statutory bond in question contained many of the same conditions as set forth in § 60-1419.

This court has previously held, and Surety does not dispute, that the Bank, if it can prove a loss caused by UAS's breach of one of the conditions in § 60-1419, is entitled to recover. See *Sun Ins. Co. v. Aetna Ins. Co.*, 169 Neb. 94, 98 N.W.2d 692 (1959).

Surety relies on *Sterner v. Lehmanowsky*, 173 Neb. 401, 113 N.W.2d 588 (1962), for the proposition that UAS's failure to pay the Bank the proceeds of Car I does not amount to willful fraud as contemplated by § 60-1419(2)(e). However correct Surety's position may be, we need not pass on that issue because § 60-1419 sets out other grounds upon which the

Bank may rely to recover under the dealer's bond, specifically § 60-1419(2)(c), the dealer's misappropriation of any funds belonging to the purchaser. It is also apparent from the lower court's order that the court, in finding for the Bank, relied on several of the conditions outlined in § 60-1419(2).

It is undisputed that Sughroue purchased Car I for $14,500 and that Fred C. Eberhardt, Jr., knew the Bank had a security interest in the car which required him to remit to the Bank the balance of the secured loan before he could obtain the title from the Bank. It is also undisputed that UAS never paid the balance due and that Sughroue never received the title to Car I. In order to deliver title to Sughroue, UAS would have to have paid the Bank $14,500. Because the Bank was never paid, title remains in it. At this point the Bank had at least two options open to it. First, it could attempt repossession of Car I from Sughroue, a bona fide purchaser for value. Second, the Bank could attempt, as it did, to recoup its loss under § 60-1419. The $14,500 check received by Eberhardt was, obviously, funds belonging to a purchaser. Proper use of those funds would have entailed payment to the Bank in order to obtain title for the purchaser. UAS, in violation of the security agreement, failed to do so; thus, the Bank suffered a $14,500 loss by reason of this misappropriation of the purchaser's funds. The district court was correct in its determination that the Bank suffered a loss within the meaning of § 60-1419.

Surety next contends the district court erred in not allowing it attorney fees on the judgment obtained against the indemnitors, as provided by the indemnity agreement.

It is the general practice in this state to allow the recovery of attorney fees and expenses only in those cases as are provided for by statute, or where the uniform course of procedure has been to allow such recovery. *Anderson Mktg. Associates v. Roberts*, 215 Neb. 670, 340 N.W.2d 384 (1983). There is no

statutory provision providing for attorney fees in an indemnity agreement. Surety's reliance on *Beshaler v. Helberg*, 187 Neb. 584, 193 N.W.2d 261 (1971), is misplaced. In *Beshaler* the recovery was pursuant to a surety bond, not an indemnity agreement. However, the Bank is entitled to an attorney fee in this court of $750. See, Neb. Rev. Stat. § 44-359 (Reissue 1978); *Beshaler v. Helberg, supra*; *Sun Ins. Co. v. Aetna Ins. Co., supra*.

With respect to the second action, *United Auto Sales, Inc. v. Sughroue*, we find that this suit also concerns an automobile purchased by Sughroue from UAS. On November 26, 1979, Sughroue and UAS, through Fred C. Eberhardt, Jr., entered into a written contract which was signed by Sughroue for the purchase of a 1979 Classic Coach, VIN 1HK57H5401969 (Car II). Sughroue took possession of Car II on the same day, falsely informing Eberhardt that he had left his checkbook at his son's apartment and would return with the check for $24,500, the purchase price of Car II. Sughroue did not pay for Car II, but subsequently drove the car to his home in Yuma, Arizona. Clayton Norquist, a corporate officer of UAS, had possession of the title for Car II. Approximately 3 weeks after signing the purchase agreement, Sughroue had Car II returned to an acquaintance of Eberhardt's in California. UAS brought suit for the purchase price of Car II. The district court found that Car II was accepted by Sughroue and that there was no effective revocation of acceptance. The district court entered judgment for $24,500, plus interest, in favor of UAS. The court further ordered that when Sughroue has paid in full the judgment of the second action, he is to receive the titles to both Car I and Car II. Sughroue appeals, contending that the court erred in not finding that he had revoked acceptance under Neb. U.C.C. § 2-608 (Reissue 1980). Sughroue further contends that the district court erred in ordering the title of Car I held in escrow until he

satisfied the judgment concerning Car II. We affirm.

It was undisputed that Sughroue signed a purchase agreement for Car II and that he drove that car for approximately 3 weeks before, without consent of UAS, he decided to have the car returned to Eberhardt's acquaintance in California. Sughroue contends that the contract for Car II was conditional upon some final decision to purchase the car. The contract, however, refutes this contention. The contract is clear and unambiguous, and as such is not subject to interpretation or construction by this court. *Kansas-Nebraska Nat. Gas Co. v. Swanson Bros.*, 215 Neb. 398, 338 N.W.2d 774 (1983).

Sughroue next relies on § 2-608, claiming that he had effectively revoked his acceptance of Car II. Section 2-608 states in part that

(1) The buyer may revoke his acceptance of a lot or commercial unit *whose nonconformity substantially impairs its value to him* if he has accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured . . . .

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it . . . .

(Emphasis supplied.)

A prerequisite to any revocation of acceptance under § 2-608 is that the buyer must, at minimum, prove some defect or nonconformity in the article that substantially impairs its value. *Countryside Mobile Homes of Lincoln, Inc. v. Schade*, 204 Neb. 209, 281 N.W.2d 756 (1979); *Koperski v. Husker Dodge, Inc.*, 208 Neb. 29, 302 N.W.2d 655 (1981). The record in the instant case is completely devoid of such proof, and as such Sughroue is not afforded protection under § 2-608. The district court held, and we agree, that "any secret reservations or schemes

of Defendant's are irrelevant'' as to whether Car II was accepted by Sughroue.

Sughroue next contends that the district court erred in holding both titles of Car I and Car II in escrow until Sughroue fully satisfied the judgment against him in the second action. Sughroue contends that the actions are not sufficiently linked to allow the district court to condition delivery of Car I's title upon the payment for Car II.

As we noted at the outset, these cases should not have been, but were, consolidated for purposes of trial. Neb. Rev. Stat. §§ 25-701 to 25-704 (Reissue 1979) set out the relevant provisions applicable to a consolidation of several causes of action. Section 25-701(1) allows consolidation when ''[t]he same transaction or transactions [are] connected with the same subject of action.'' Sughroue, having voluntarily agreed to consolidate the cases, cannot now be heard to complain of the ramifications of such an agreement. See, 1 C.J.S. *Actions* § 115 (1936); *Bryant Heating v. United States Nat. Bank*, 216 Neb. 107, 342 N.W.2d 191 (1983).

The judgment of the district court being correct, it is affirmed.

AFFIRMED.