PAUS MOTOR SALES, INC., A NEBRASKA CORPORATION,
APPELLEE, V. WESTERN SURETY COMPANY,
A SOUTH DAKOTA CORPORATION, APPELLANT.

572 N.W. 2d 403

Filed December 2, 1997.    No. A-96-580.

Joseph C. Byam, of Byam & Byam, for appellant.

Jeffrey A. Silver for appellee.

HANNON, IRWIN, and INBODY, Judges.

HANNON, Judge.

The plaintiff, Paus Motor Sales, Inc. (Paus), brought this action against the defendant, Western Surety Company (Western), to recover under a motor vehicle dealer's bond issued to William E. Haning, doing business as Haning Auto Sales, by the defendant. On the parties' motions for summary judgment, the district court found that Western was liable under that provision of the bond which covered dealers' misappropriation of funds belonging to purchasers. Consequently, the court sustained Paus' motion and denied Western's motion. We now conclude that under the undisputed facts Haning, as a matter of law, did not misappropriate the funds of anyone. Therefore, Paus is not entitled to recover on the bond, and Western is entitled to summary judgment. Consequently, we reverse the judgment of the district court and remand the cause with directions to dismiss the petition.

## UNDISPUTED FACTS

Paus is a licensed automobile dealership in West Point, Nebraska, doing business in both new and used vehicles. Steve Paus is the vice president of the corporation, and Brooks Barnes is the general sales manager. Haning and Barnes are prior acquaintances, dating back to when they both worked in the auto sales industry in Florida. Sometime in the spring of 1994, Haning moved to West Point and was interested in starting his own used-car business. To that purpose, Haning applied for a Nebraska license and in connection therewith obtained a bond from Western, as surety, in the statutorily required amount of $25,000. After Haning received his license, Paus and Haning entered into a number of vehicle sale transactions, the first of which occurred on November 20, 1994.

The record reflects that Paus, through Barnes, sold used vehicles to Haning to help Haning start his business. In exchange for the vehicle and its title, Paus would receive a check for the sale price. However, Haning asked Paus not to cash the checks until Haning had given his approval. The overall number of sales to Haning is not known. While Haning did make payment on many of the vehicles, it is undisputed that by August 1995, Haning

had failed to pay for 13 vehicles, totaling somewhere between $19,075 and $20,775.

## PROCEDURAL BACKGROUND

On October 20, 1995, Paus filed a petition against Western, seeking to recover under the motor vehicle dealer's bond that Western issued to Haning in accordance with Neb. Rev. Stat. § 60-1419 (Reissue 1993). In the petition, Paus alleged that Haning had failed to pay for 13 vehicles (although the petition includes the paperwork on 14 different sale transactions, we note that one is a duplicate copy) "in violation of the provisions of the Bond including, but not limited to the misappropriation of funds and the false and fraudulent misrepresentations and/or deceitful practices," and that as a direct and proximate result, Paus had incurred losses of $20,775. Paus also alleged that it had submitted the loss to Western for payment and that Western had "failed, refused and neglected to pay such loss." Paus prayed for judgment in the amount of $20,775, plus costs and attorney fees. In its answer, Western generally alleged that Paus' losses were not compensable under the provisions of the bond. Both parties then moved for summary judgment. The district court found that there was no genuine issue of material fact—Paus' loss was caused by Haning's breach of subsection (2)(c) of the bond (see, also, § 60-1419(2)(c)) concerning dealers' misappropriation of funds belonging to purchasers. Therefore, the court sustained Paus' motion for summary judgment in the amount of $20,775 and denied Western's motion. Western now appeals.

## ASSIGNMENTS OF ERROR

Western contends that the district court erred in (1) sustaining Paus' motion for summary judgment and overruling its motion for summary judgment, because Haning's failure to pay Paus was not a misappropriation of any funds belonging to the purchaser under the provisions of the bond and § 60-1419(2)(c); (2) failing to find that Haning was "the purchaser" under the bond and § 60-1419(2)(c) and that there was no coverage under the bond for Paus' claim against Haning; (3) finding that Haning's failure to pay Paus was a covered loss under the bond and § 60-1419(2)(c); (4) failing to sustain its objections to cer-

tain portions of the affidavits of Paus and Haning; and (5) calculating the amount owed under the bond as $20,775, rather than $19,075.

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Schendt v. Dewey*, 252 Neb. 979, 568 N.W.2d 210 (1997). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

■ Although the denial of a motion for summary judgment is not a final order and thus may not be appealed, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both of the motions, may determine the controversy which is the subject of those motions, and may make an order specifying the facts which appear without substantial controversy and directing such further proceedings as it deems just. *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993); *Nu-Dwarf Farms v. Stratbucker Farms*, 238 Neb. 395, 470 N.W.2d 772 (1991).

■ On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997).

## ANALYSIS

Paus seeks to recover under the motor vehicle dealer's bond issued to Haning by Western. In deciding whether Paus can recover under the bond, we must determine (1) if Paus is protected under the bond and (2) whether Haning misappropriated the funds of any purchasers.

■Though not determinative of the instant appeal, we note that the law at the time of the execution of a statutory bond is

part of it; if it gives to the bond a certain legal effect, it is as much a part of the bond as if in terms incorporated therein. *State Surety Co. v. Peters*, 197 Neb. 472, 249 N.W.2d 740 (1977); *Sun Ins. Co. v. Aetna Ins. Co.*, 169 Neb. 94, 98 N.W.2d 692 (1959). Further, the liability of a surety on statutory undertakings is measured by the terms of the statute rather than by the terms set forth in the agreement, where the two are in conflict, as the statute forms a controlling part of every such agreement. *State Surety Co. v. Peters, supra.* Thus, although the 1989 amendments to § 60-1419 (Reissue 1993), see 1989 Neb. Laws, L.B. 608, were not made part of the bond issued by Western to Haning in 1994, they automatically became part of the bond. Consequently, we consider this case as though the bond provided according to § 60-1419:

> (1) [t]hat the applicant will faithfully perform all the terms and conditions of such license; (2) that the licensed dealer will first fully indemnify any holder of a lien or security interest created pursuant to section 60-110 or article 9, Uniform Commercial Code, whichever applies, in the order of its priority and then any person or other dealer by reason of any loss suffered because of (a) the substitution of any motor vehicle or trailer other than the one selected by the purchaser, (b) the dealer's failure to deliver to the purchaser a clear and marketable title, (c) the dealer's misappropriation of any funds belonging to the purchaser, (d) any alteration on the part of the dealer so as to deceive the purchaser as to the year model of any motor vehicle or trailer, (e) any false and fraudulent representations or deceitful practices whatever in representing any motor vehicle or trailer, and (f) the dealer's failure to remit the proceeds from the sale of any motor vehicle which is subject to a lien or security interest to the holder of such lien or security interest; and (3) that the motor vehicle, motorcycle, motor vehicle auction, or trailer dealer or wholesaler shall well, truly, and faithfully comply with all the provisions of his or her license and the acts of the Legislature relating to such license. The aggregate liability of the surety shall in no event exceed the penalty of such bond.

*Is Paus Protected Under Motor Vehicle Dealer's Bond?*

Western contends that motor vehicle dealer's bonds issued under § 60-1419 were designed only to protect consumers and not "to serve as an insurance policy for the business dealings between car dealers in Nebraska." Brief for appellant at 29. We disagree. The statute protects car dealers as well as other persons, but only from the acts enumerated in the statute—it does not protect against all losses. In *Sun Ins. Co. v. Aetna Ins. Co.*, 169 Neb. at 110, 98 N.W.2d at 701-02, the Nebraska Supreme Court stated the following concerning what is now codified as § 60-1419:

> As we interpret section 60-619, R. S. Supp., 1955, upon which the plaintiff's bond is based, the Legislature intended that persons other than purchasers might sustain damage or loss by reason of a motor vehicle dealer's misrepresentations, false and fraudulent acts, and misappropriation of funds or deceitful practices in representing a motor vehicle to the purchaser thereof. It is obvious that the Legislature intended that any person sustaining loss by reason of a motor vehicle dealer's conduct in engaging in acts prohibited by law would be entitled to recourse on such a bond as the plaintiff's bond in the instant case, regardless of the particular status of such person as defined in section 60-601, R. S. Supp., 1955.

Moreover, the court has commented: "In *Sun Ins. Co. v. Aetna Ins. Co.*, [*supra*,] and *Sterner v. Lehmanowsky*, 173 Neb. 401, 113 N.W.2d 588 (1962), we stated that persons in addition to purchasers of automobiles are protected under the bond against loss resulting from misappropriation of funds belonging to the purchasers." *Adams Bank & Trust v. Empire Fire & Marine Ins. Co.*, 235 Neb. 464, 467, 455 N.W.2d 569, 571 (1990) (bank financing dealer's used-car operation through floor plan arrangement and security agreement recovered under misappropriation provision of bond for vehicles which dealer sold "out of trust"). See, also, *Havelock Bank v. Western Surety Co.*, 217 Neb. 560, 352 N.W.2d 855 (1984) (bank entitled to recover under misappropriation provision of bond because it had suffered loss when dealer sold vehicles "out of trust"). But see, *Sterner v. Lehmanowsky, supra* (suggesting that those who do not qualify as purchasers can only recover for fraud).

■ Based on the foregoing authorities, we conclude that any loss by reason of a motor vehicle dealer's conduct in engaging in acts prohibited by law and enumerated in § 60-1419 entitles the offended party recourse on a motor vehicle dealer's bond.

■ While Paus alleged that it could recover under the bond for "false and fraudulent representations and/or deceitful practices," it does not allege any such supporting facts. In particular, fraud is generally a question of fact and, to be sufficient as a cause of action or defense, must be pleaded by suitable allegations of fact from which it may be concluded. *Preferred Pictures Corp. v. Thompson*, 170 Neb. 694, 104 N.W.2d 57 (1960). Moreover, Paus does not contend on appeal that there was any fraud. Thus, we limit our discussion to misappropriation of purchaser's funds.

*Misappropriation of Purchaser's Funds.*

As first stated in *Sun Ins. Co. v. Aetna Ins. Co.*, 169 Neb. 94, 110, 98 N.W.2d 692, 701 (1959), "the Legislature intended that any person sustaining loss by reason of a motor vehicle dealer's conduct in engaging in *acts prohibited by law* would be entitled to recourse on such a bond . . . ." (Emphasis supplied.) Such acts are those found in § 60-1419(2), which include misrepresentation, fraud, and misappropriation of purchaser's funds.

■ In *Adams Bank & Trust v. Empire Fire & Marine Ins. Co., supra*, and *Havelock Bank v. Western Surety Co., supra*, banks that had entered into floor plan arrangements and security agreements with dealers were able to recover under motor vehicle dealer's bonds for the dealers' sale of vehicles that were "out of trust." While the sale of personal property "out of trust" with fraudulent intent is a Class IV felony, see Neb. Rev. Stat. § 69-109 (Reissue 1996) and *State v. Hocutt*, 207 Neb. 689, 300 N.W.2d 198 (1981), a person cannot be prosecuted for the failure to pay a contractual obligation without proof of fraud. See *State ex rel. Norton v. Janing*, 182 Neb. 539, 156 N.W.2d 9 (1968) (holding that statute which failed to require finding of fraud and which permitted prosecution for criminal offense for failure to pay contractual obligation without proof of fraud was unconstitutional).

The record reveals that Haning purchased the 13 motor vehicles in question from Paus, in exchange for which he issued

checks. At the time Haning issued the checks, he received not only possession of the vehicles but also the certificates of title. In his affidavit, Haning testified that he asked Paus to hold the checks and that "payment would be made when the vehicles were sold." Haning further testified that he sold each of the vehicles to purchasers, that he received funds from each of the purchasers, and that he failed to pay over any such funds to Paus. It is undisputed that Paus never asked Haning to sign a security agreement and never took a lien on any of the vehicles.

■ Upon delivery of the vehicles to Haning, Paus did not in any way retain or reserve titles to the vehicles, see Neb. U.C.C. § 2-401(1) (Reissue 1992) (any retention or reservation by seller of title in goods shipped or delivered to buyer is limited in effect to reservation of security interest), through a written security agreement. See, Neb. U.C.C. § 9-203 (Cum. Supp. 1994); § 9-203, comment 1 (Reissue 1992) (for security agreement to attach, one of requirements is that agreement be in writing, unless collateral is in possession of secured party). In fact, Paus gave the titles directly to Haning. Thus, the vehicles were Haning's, and upon their subsequent sale, the proceeds were also Haning's. Haning's failure to remit that money did not constitute sales "out of trust" and was not otherwise unlawful. It was merely a failure to pay his debts; and the failure to pay debts is not a misappropriation of funds of purchasers, nor is it a violation of law.

Of the cases considering the sureties' liability under an automobile dealer's bond, only *Sterner v. Lehmanowsky*, 173 Neb. 401, 113 N.W.2d 588 (1962), is concerned with the failure to fulfill a promise as a misappropriation or a fraudulent act under the dealer's bond, and only one of the four transactions litigated in that case involved the failure to fulfill a promise. Lehmanowsky had promised to turn over certain insurance proceeds but failed to do so. The *Lehmanowsky* court said:

> We do not believe Lehmanowsky's failure to keep his promise to turn over the proceeds is a misappropriation within the terms of the bond on the evidence in this record.
> . . . We agree the bond does protect against willful fraud, but willful fraud is not proved by the mere failure to keep a promise or to pay a debt.

*Id.* at 411-12, 113 N.W.2d at 595. Paus' evidence proves only that Haning failed to pay for the vehicles as he promised.

We conclude, as a matter of law, that Haning's oral promise to repay Paus upon the subsequent sales of the vehicles did not create a security interest. Therefore, Haning's failure to remit the proceeds to Paus did not amount to a misappropriation of anyone's funds, nor was his failure to pay an unlawful act.

## CONCLUSION

Having concluded that Paus' action must be dismissed, the other issues presented need not be considered. The judgment of the district court is hereby reversed and the cause remanded with directions to dismiss the petition, and Paus' motion for attorney fees is denied.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.